1   BENJAMIN K. RILEY (SBN 112007)
      *briley@bzbm.com*
2   KERRY L. DUFFY (SBN 233160)
      *kduffy@bzbm.com*
3   BARTKO ZANKEL BUNZEL & MILLER
    A Professional Law Corporation
4   One Embarcadero Center, Suite 800
    San Francisco, California 94111
5   Telephone: (415) 956-1900
    Facsimile:  (415) 956-1152
6
    Attorneys for Plaintiff
7   RICCARDO SILVA

8

9                    UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11

|  |  |
|---|---|
| 12 | Case No. 3:23-mc-80122 |
| 13 | (Originating Case: Silva v. Doe 1, et al., S.D. Fla. 1:22-cv-24262-RKA) |
| 14 *IN RE: SUBPOENA TO X CORP., Successor in Interest to TWITTER, INC.* | **PLAINTIFF RICCARDO SILVA'S NOTICE OF MOTION AND MOTION TO COMPEL THIRD-PARTY TWITTER, INC. TO RESPOND TO SUBPOENA; MEMORANDUM IN SUPPORT** |
| | Date:      TBD |
| | Time:     TBD |
| | Ctrm.:    TBD |

**TO ALL PARTIES, THIRD-PARTY X CORP., SUCCESSOR IN INTEREST TO TWITTER, INC., AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on _____, at ___:___ __, or as soon thereafter as this matter may be heard in the courtroom of _____, located at _____, California _____, Plaintiff Riccardo Silva ("Plaintiff" or "Mr. Silva"), will and hereby does move this Court for an Order compelling Third-Party X Corp., successor in interest to Twitter, Inc. ("Twitter"), to comply with Plaintiff's subpoena served on Twitter on April 3, 2023 (the "Subpoena").

This Motion to Compel is brought pursuant to Rules 26, 37 and 45 of the Federal Rules of Civil Procedure, and the applicable Local Rules of this Court, on the grounds that counsel for Plaintiff and Twitter met and conferred in good faith pursuant to Civil Local Rule 37, but were unable to resolve Twitter's First Amendment objection. Specifically, Twitter maintains that it cannot comply with the Subpoena absent a Court Order directing compliance, asserting that a Court must first conduct a First Amendment analysis of the requested discovery, including whether Mr. Silva has satisfied the applicable standard regarding the qualified right to anonymous speech under the First Amendment to the United States Constitution.

This Motion to Compel is based on this Notice of Motion and Motion, as well as the following Memorandum in Support, the accompanying Declaration of Kerry L. Duffy, the accompanying Declaration of Adam Stolz and all exhibits thereto, all cited authorities, all files and records in the underlying litigation currently pending in the U.S. District Court for the Southern District of Florida, *Silva v. John Doe 1, et al.*, Case No. 1:22-cv-24262-RKA, any additional matters as may be judicially noticed by the Court, and on the oral argument and any other evidence that may come before the Court prior to or during the hearing on this Motion to Compel.

DATED:  April 20, 2023

BARTKO ZANKEL BUNZEL & MILLER
A Professional Law Corporation


By:     /s/ *Kerry L. Duffy*
Kerry L. Duffy
Attorneys for Plaintiff RICCARDO SILVA

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ................................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND ..........................................2

    A.     The Defamation Campaign And the Florida Lawsuit .................................2

    B.     Mr. Silva's Overwhelming Efforts to Discover Defendants' Identities....................3

    C.     The Subpoena, Twitter's Objections, and Meet-and-Confer in Satisfaction of Civil Local Rule 37 ..............................................................................4

III.   ARGUMENT .....................................................................................................6

    A.     Summary of Law ........................................................................................6

    B.     Notice Has Been Provided to the Anonymous Doe Defendant .................8

    C.     Mr. Silva Alleges a *Prima Facie* Case Under Florida Law for Defamation, Defamation *Per Se*, and Defamation by Implication ................................8

        1.     Publication................................................................................9

        2.     Falsity ....................................................................................11

        3.     Defamation *Per Se*: Malice*,* Damages, Defamatory ...................12

    D.     Mr. Silva Alleges a *Prima Facie* Case Under Florida Law for Intentional Infliction of Emotional Distress ("IIED") and Stalking (Fla. Stat. § 784.0485).................................................................................................13

        1.     IIED ........................................................................................13

        2.     Stalking (Fla. Stat. § 784.0485)...............................................13

    E.     The Balance of the Equities Favors Disclosure of Basic Identifying Information.............................................................................................14

IV.    CONCLUSION ...............................................................................................16

i

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*In re Anonymous Online Speakers*
   661 F.3d 1168 (9th Cir. 2011) ................................................................................. 7

*Art of Living Found. v. Does 1-10*
   No. 10-CV-05022-LHK, 2011 WL 5444622 (N.D. Cal. Nov. 9, 2011) ..................... 7

*Blake v. Giustibelli*
   182 So.3d 881 (Fla. 4th DCA 2016) ................................................................. 9, 12

*Corsi v. Newsmax Media, Inc.*
   519 F. Supp. 3d 1110 (S.D. Fla. 2021) ........................................................... 9, 12

*In re DMCA § 512(h) Subpoena to Twitter, Inc.*
   608 F. Supp. 3d 868 (N.D. Cal. June 21, 2022) .............................................. 7, 8

*Friedgood v. Peters Pub. Co.*
   521 So.2d 236 (Fla. 4th DCA 1988) ................................................................... 11

*Garrett v. City & Cnty. of San Francisco*
   818 F.2d 1515 (9th Cir. 1987) .............................................................................. 7

*Gertz v. Robert Welch, Inc.*
   418 U.S. 323 (1974) ........................................................................................... 11

*Gonzalez v. Google, Inc.*
   234 F.R.D. 674 (N.D. Cal. 2006) .......................................................................... 6

*Granda-Centeno v. Lara*
   489 So.2d 142 (Fla. 3d DCA 1986) ..................................................................... 10

*Highfields Cap. Mgmt., L.P. v. Doe*
   385 F. Supp. 2d 969 (N.D. Cal. 2005) ............................................................ 7, 14

*Jews For Jesus, Inc. v. Rapp*
   997 So.2d 1098 (Fla. 2008) .................................................................................. 9

*Klayman v. Judicial Watch, Inc.*
   22 F. Supp. 3d 1240 (S.D. Fla. 2014) ............................................................. 9, 11

*Krinsky v. Doe 6*
   159 Cal. App. 4th 1154 (Cal. 2008) ...................................................................... 8

*Morse v. Ripken*
   707 So.2d 921 (Fla. 4th DCA 1998) .................................................................... 11

*Music Grp. Macao Com. Offshore Ltd. v. Does*
    82 F. Supp. 3d 979 (N.D. Cal. 2015) ............................................................... 7, 14

*Norkin v. The Fla. Bar*
    311 F. Supp. 3d 1299 (S.D. Fla. 2018) ................................................................. 3

*Ozyesilpinar v. Jalali*
    325 So.3d 289 (Fla. 3d DCA 2021) .................................................................... 13

*Sirpal v. Univ. of Miami*
    684 F. Supp. 2d 1349 (S.D. Fla. 2010) ................................................................ 9

*Skupin v. Hemisphere Media Grp., Inc.*
    314 So.3d 353 (Fla. 3d DCA 2020) .................................................................... 11

*Smythe v. Does*
    Case No. 15-mc-80292-LB, 2016 WL 54125 (N.D. Cal. Jan. 5, 2016) ............................ 2, 7

*Solers, Inc. v. Doe*
    977 A.2d 941 (D.C. 2009) ................................................................................. 8

*Williams v. Worldwide Flight SVCS., Inc.*
    877 So.2d 869 (Fla. 3d DCA 2004) .................................................................... 13

**Constitutions**

Fla. Const. Article I, § 4 ..................................................................................... 8

**Statutes**

Florida Statute
    § 784.0485(1) ......................................................................................... 3, 13

**Court Rules**

Federal Rules of Civil Procedure
    Rule 1 ....................................................................................................... 15
    Rule 26 ....................................................................................................... 6
    Rule 26(b)(1) ............................................................................................... 6
    Rule 26(b)(2) ............................................................................................... 7
    Rule 45 ................................................................................................... 6, 15
    Rule 45(a)(1)(D) ........................................................................................... 6
    Rule 45(d)(2)(B)(i) ........................................................................................ 6

N.D. California Civil Local Rules
    Rule 37 ....................................................................................................... 5
    Rule 37-2 ..................................................................................................... 7

# MEMORANDUM IN SUPPORT

## I.     INTRODUCTION

Strong grounds and the equities exist for the Court to issue an order compelling Twitter to comply with the Subpoena and promptly produce the requested documents and information.[1] This action arises out of a pending lawsuit in the Southern District of Florida proceeding under Case No. 1:22-cv-24262-RKA (the "Florida Lawsuit"). *See* Stolz Decl. iso Motion to Compel ("Stolz Decl.") filed herewith at ¶ 1, Ex. 1 [Complaint]. The underlying Florida Lawsuit involves various claims regarding a carefully-crafted defamation campaign waged against Mr. Silva by one or more anonymous individuals (with the assistance of a mobile billboard company), who are currently identified in the Florida Lawsuit as Defendants John Doe 1, John Doe 2, John Doe 3, and John Doe 4 (the "Defendants").[2] Mr. Silva is a successful businessman, philanthropist, and devoted husband and father.

While the identities of the Defendants are unknown to Mr. Silva at this moment, it is clear that these individuals carefully planned and coordinated their defamation campaign to deliberately target and harm Mr. Silva. They have gone to great lengths to conceal their identities and evade the consequences of their flagrantly unlawful actions. Specifically, the false and defamatory statements entail express and implied accusations of criminality—such as sexual misconduct and bribery. *See* Stolz Decl. ¶ 1, Ex. 1 ¶¶ 17, 21, 24, 26, 28-29, 33, 45.

As further explained herein, the Subpoena requests documents and information from Twitter regarding the identity of the user(s) or subscriber(s) who own(s) and operate(s) the Twitter Handle, u/SOSSilva7.[3] *See* Stolz Decl. ¶ 14, Ex. 6 [Subpoena]. Over the past several months,

---

[1] We advise the Court that on April 19, 2023, Mr. Silva filed a very similar motion to compel, on the same grounds, with respect to a third-party subpoena served on Reddit, Inc. That motion has been assigned to Magistrate Judge Kandis A. Westmore, Miscellaneous Case No, 3:23-mc-80119-KAW. Given the similar memorandum and arguments on the current motion to compel against Twitter, Mr. Silva will file a Notice of Related Case and request that Magistrate Judge Westmore also be assigned to hear this motion.

[2] Since it is unknown and unknowable at this time whether the anonymous "John Doe" defendants are a single individual or a team of two or more individuals, this Motion to Compel will refer to them collectively in the plural as the "Defendants" unless otherwise specified.

[3] The "Handle" as used in this motion shall have the same meaning as it does in the Subpoena, which is "the Twitter handle or account, u/SOSSilva7." *See* Stolz Decl. ¶ 14, Ex. 6 at ¶ 8.

1   Mr. Silva has undertaken *substantial* measures and expense in an attempt to identify the

2   Defendants—to no avail. *Id.* ¶ 9. The information sought in the Subpoena to Twitter is critical to

3   the interests of justice because it seeks necessary information that could potentially identify one

4   (or more) of the Defendants, specifically, John Doe 3 (the "Defamatory Speaker").[4] Mr. Silva

5   seeks the requested information to identify and serve the anonymous Defamatory Speaker in the

6   Florida Lawsuit. Given that the identity of the Defamatory Speaker is not yet known by Mr. Silva,

7   Twitter has already notified the Defamatory Speaker of the Subpoena and has agreed to provide

8   him/her/them with copies of all filings in this action, including the instant Motion to Compel. *See*

9   Duffy Decl. iso Motion to Compel ("Duffy Decl.") filed herewith at ¶ 7.

10          As demonstrated below, the matter before the Court presents a *classic* example of when an

11   anonymous speaker's unlawful, defamatory remarks and evasive conduct results in a forfeiture of

12   the speaker's qualified right to anonymity. *See Smythe v. Does*, Case No. 15-mc-80292-LB, 2016

13   WL 54125, at *2 (N.D. Cal. Jan. 5, 2016) ("Where anonymous speech is alleged to be unlawful,

14   the speaker's right to remain anonymous may give way to a plaintiff's need to discover the

15   speaker's identity in order to pursue its claim.") (citation omitted). Accordingly, for the reasons

16   provided herein, Mr. Silva respectfully requests the Court issue an order granting this Motion to

17   Compel.

18   **II.      FACTUAL AND PROCEDURAL BACKGROUND**

19          **A.      The Defamation Campaign And the Florida Lawsuit**

20          For unknown reasons, the anonymous Defendants orchestrated and executed an elaborate

21   defamation and harassment campaign against Mr. Silva involving numerous false, defamatory,

22   extreme and outrageous statements published across a website, Reddit.com, Twitter.com, and a

23   mobile billboard. Stolz Decl, ¶ 1, Ex. 1 ¶¶ 1-5, 15-18. Numerous examples of these sensationally

24   false statements are set out in the Complaint in the Florida Lawsuit. In particular, the Defendants

25   have falsely and outrageously published statements that accuse Mr. Silva of criminal activity,

26   including bribery and some of the most infamous acts conceivable involving serial sexual abuse

27

28   ────────────────────
[4] Per the Complaint, John Doe 3 is the owner of the Twitter handle u/SOSSilva7, which was used
to post defamatory and false accusation against Mr. Silva. Stolz Decl. ¶ 1, Ex. 1, ¶¶  12 & 28-29.

and sexual harassment against "young women" in the modeling industry. Stolz Decl. Ex. 1 ¶¶ 17, 21, 24, 26, 28-30, 33, 45. Moreover, the defamatory statements falsely liken him to the conduct of Jeffry Epstein—one of the most notorious sex offenders in American history. *See id.* Ex. 1 ¶¶ 17, 21, 29, 53.

Of particular significance to this Motion to Compel are the allegations and claims regarding the false and defamatory statements published by "John Doe 3" (and potentially other Defendants) on Twitter's platform under the Handle u/SOSSilva7. *Id.*, ¶¶ 1 and 3, and Ex. 1, ¶ 28-30. The false and defamatory statements remain publicly available on Twitter's platform, including on the posts and pages the Defendants created, which puts the identity of the individual(s) behind the Twitter Handle directly at issue. *Id.*, ¶ 1.

## B.      Mr. Silva's Overwhelming Efforts to Discover Defendants' Identities

On January 4, 2023, Mr. Silva initiated the Florida Lawsuit and brought five claims against the Defendants in the Southern District of Florida: Defamation[5] (Count I), Defamation Per Se (Count II), Defamation by Implication (Count III), Intentional Infliction of Emotional Distress (Count IV), and Stalking under section 784.0485(1), Florida Statutes (Count V). Stolz Decl, ¶ 1. Since filing the Florida Lawsuit, Mr. Silva has worked diligently to identify the anonymous Defendants primarily so he can effectuate proper service for the Florida Lawsuit. *Id.*, ¶¶ 1, 3-4, 9, 14, 16 and Ex. 4. However, Mr. Silva has not yet been able to identify the anonymous Defendants, including the Defamatory Speaker behind the Twitter Handle. *Id.* Nevertheless, Mr. Silva has undertaken *substantial* efforts and incurred *significant* expense in attempting to identify and serve the Defendants, including but not limited to, the following:

- Subpoenaed Twitter for the identity of the owner(s) of the Twitter Handle, the publisher(s) of the defamatory Twitter posts, and the moderator(s) of the Twitter forum at issue in the Complaint—which, as discussed below, is the subject of this motion.

- Subpoenaed Reddit, Inc. ("Reddit") for the identity of the owner(s) of the Reddit account at issue in the Complaint;

- Subpoenaed Wix for the identity of the purchaser of the Wix-domain associated with

---

[5] In Florida, defamation "encompasses both libel and slander." *Norkin v. The Fla. Bar*, 311 F. Supp. 3d 1299, 1303 (S.D. Fla. 2018) (citations omitted). As noted in the Complaint, the three defamation claims brought by Mr. Silva are for libel and are intended to be construed as such in this Motion to Compel. *See* Stolz Decl. ¶ 1, Ex. 1 at Counts I-III, pp. 13-15.

the Website at issue in the Complaint;

- Subpoenaed Verizon, which is the cell-phone service provider for at least one individual believed to be at the helm of the defamation campaign against Mr. Silva and the network provider for the IP address associated with the Website;

- Subpoenaed several individuals based on records produced by Verizon and Wix; and

- Engaged a private investigator to assist in identifying the anonymous Defendants.

Additionally, Mr. Silva is in the process of preparing and issuing subpoenas to several other individuals and companies in hopes of uncovering information that could lead to the identities of the Defendants. These and other efforts are detailed in a public filing in the Florida Lawsuit. *Id*. ¶ 9, Ex. 4. Once again, the foregoing is only a sample of Mr. Silva's extensive efforts undertaken thus far. At this time, however, Mr. Silva has not received any information from Twitter or elsewhere that could be reasonably calculated to lead to the discovery of the information sought in the Subpoena. *Id*. ¶¶ 7, 9, 14-18, and Ex. 8.

**C.      The Subpoena, Twitter's Objections, and Meet-and-Confer in Satisfaction of Civil Local Rule 37**

Initially, Mr. Silva issued a subpoena to Twitter on February 10, 2023 issued from the Florida Lawsuit (the "Initial Subpoena") which requested documents and information relating to the identity of the user(s) or subscriber(s) who own(s) and operate(s) the Twitter Handle, with the place of compliance in Florida. Stolz Decl. at ¶ 4, Ex. 2. Shortly thereafter, counsel for Twitter asserted various objections in response to the Initial Subpoena in lieu of providing responsive documents or information. *Id*. at ¶ 5, Ex. 3.

Counsel for Plaintiff and Twitter thereafter engaged in cooperative meet-and-confer efforts, communicating via email and by phone on numerous occasions in the weeks after Twitter provided its objections to the Initial Subpoena; in that process, they were able to clarify and dispense with several of Twitter's objections. *Id*. ¶¶ 3, 6-18, Ex. 8. To amicably resolve certain other objections, counsel for Mr. Silva issued and served the instant Subpoena upon Twitter in California on April 3, 2023, with the place of compliance in San Francisco. *Id*. ¶¶ 11-14, Ex. 6 [Subpoena]; *see also* Duffy Decl. ¶ 3. This was done with the understanding that if Mr. Silva were

1    required to file a motion to compel the requested discovery from Twitter, it would be filed in the

2    Northern District of California (where Twitter is headquartered).[6] Stolz Decl. ¶¶ 11 and 14.

3            The Subpoena requests the following from Twitter:

4            All non-content documents, communications, and information that constitute basic

5            subscriber information for the owner(s) of the Handle, including, but not limited to,

6            name(s), street/mailing address(s), email address(es), IP logs, username(s) or other

7            subscriber identity, payment information, billing information, or any other

8            information that is related or could be used to identify the owner(s) of the Handle.

9            *Id.* ¶ 14, Ex. 6 at 7.

10           On April 11, 2023, Twitter responded with its written objections to the Subpoena. *Id.* ¶ 15,

11   Ex. 7. Among other things, the letter stated that:

12           Twitter further objects to the Request to the extent it seeks to unmask the identity

13           of an anonymous speaker. You have provided no documentation demonstrating that

14           the Court considered and imposed the First Amendment safeguards required before

15           a litigant may be permitted to unmask the identity of an anonymous speaker. *Id.*, at

16           page 4.

17           Pursuant to this Court's Civil Local Rule 37, on April 13, 2013, counsel for Mr. Silva and

18   Twitter continued to engage in meet-and-confer efforts via Zoom in an attempt to resolve the

19   issues raised in Twitter's objection letter. *Id.* ¶¶ 16-17, and Ex. 8. Counsel for both sides made

20   progress in narrowing the scope of the Subpoena (clarifying it is limited to non-content basic

21   subscriber information including IP addresses for the Twitter Handle) and, in turn, narrowing

22   Twitter's objections. *Id.* ¶ 16. Ultimately, Twitter's only remaining objection to the Subpoena was

23   limited to First Amendment concerns, taking the position that it could not produce the requested

24   documents or information unless a court issues an order determining that Plaintiff has satisfied

25

26   [6] Notice of the Subpoena was served on the only named Defendant to the Florida Lawsuit, Mobile
     Billboards, Inc. on March 31, 2023, whose counsel confirmed later that day that they had no
27   objection to the Subpoena. Stolz Decl. ¶ 15, Ex. 5. Also, following receipt of the Subpoena,
     counsel for Twitter advised that Twitter had notified the Defamatory Speaker(s) of the Subpoena.
28   Duffy Decl. ¶ 7.

1  certain First Amendment safeguards applicable to such requests. Stolz Decl. ¶ 16. As such, further

2  meet-and-confer efforts appeared futile. *Id.* Nevertheless, prior to filing the instant Motion to

3  Compel, California counsel for Plaintiff further met and conferred with Twitter's counsel to

4  discuss Twitter's objection and see if anything more could be done to resolve them. Duffy Decl.

5  ¶ 4. However, counsel still could not mutually resolve Twitter's sole remaining objection

6  regarding the First Amendment. Duffy Decl. ¶¶ 6-7.

7       Based on Twitter's objection, and having exhausted efforts to resolve this matter without

8  judicial intervention, Mr. Silva needs an Order from this Court to obtain the necessary basic

9  subscriber information with IP addresses to identify the owner of the Twitter Handle.

10 **III.    ARGUMENT**

11      **A.    Summary of Law**

12      Strong grounds exist for the Court to issue an order compelling Twitter to comply with the

13 Subpoena and promptly produce the requested information. Rule 45 of the Federal Rules of Civil

14 Procedure[7] provides the framework for obtaining discovery on a third-party through subpoenas.

15 Fed. R. Civ. P. 45(a)(1)(D). The scope of a subpoena issued under Rule 45 is informed by Rule

16 26, which governs civil discovery in general. *See, e.g.*, *Gonzalez v. Google, Inc.*, 234 F.R.D. 674,

17 680 (N.D. Cal. 2006). Under the Rules, a court may compel a third-party to produce documents

18 and information pursuant to a subpoena regarding any "non-privileged matter that is relevant to

19 any party's claim or defense and proportional to the needs of the case." *See* Fed. R. Civ. P.

20 26(b)(1); s*ee also* Fed. R. Civ. P. 45(d)(2)(B)(i) ["[a]t any time, on notice to the commanded

21 person, the serving party may move the court for the district where compliance is required for an

22 order compelling production or inspection." ]. On a motion to compel compliance, the moving

23 party is to "detail the basis for the party's contention that it is entitled to the requested discovery

24 and show how the proportionality and other requirements of Fed. R. Civ. P. 26(b)(2) are satisfied."

25

26

27

28

---

[7] Unless otherwise specified, any reference to a "Rule" or the "Rules" shall be construed as a reference to the Federal Rules of Civil Procedure.

N.D. Cal. Civ. LR. 37-2. The Court has discretion to determine whether to grant a motion to compel. *See Garrett v. City & Cnty. of San Francisco*, 818 F.2d 1515, 1519 (9th Cir. 1987).

When a motion to compel involves a third-party subpoena to an online service provider for documents and information that could potentially reveal the identity of an anonymous speaker, a threshold determination regarding certain First Amendment standards must first be made. This is premised on an online user's First Amendment right to anonymous speech. *See, In re DMCA §512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868 at 876 (N.D. Cal. June 21, 2022) (citing *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011)). But "the right to anonymity is not absolute." *Smythe v. Does*, Case No. 15-mc-80292-LB, 2016 WL 54125, at *2 (N.D. Cal. Jan. 5, 2016) (citing *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *4 (N.D. Cal. Nov. 9, 2011)); *accord In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011). "Where anonymous speech is alleged to be unlawful, the speaker's right to remain anonymous may give way to a plaintiff's need to discover the speaker's identity in order to pursue its claim." *Art of Living*, 2011 WL 5444622, at *4.

On a motion to compel a service provider to produce information that could potentially reveal the identity of an anonymous speaker, the party seeking the information must first "persuade the court that there is a real evidentiary basis for believing that the defendant has engaged in wrongful conduct that has caused real harm to the interests of the plaintiff." *Music Grp. Macao Com. Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 983 (N.D. Cal. 2015) (citing *Highfields Cap. Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 975-76 (N.D. Cal. 2005). In reaching such a determination, this court has applied a three-pronged framework: "[W]hen adjudicating a subpoena or other request for compelled disclosure that would reveal the identity of an anonymous speaker, a court should (1) notify the speaker and provide them with an opportunity to (anonymously) defend their anonymity; (2) require the party seeking disclosure to make a prima facie showing on the merits of their claim; and (3) balance the equities, weighing the potential harm to the party seeking disclosure against the speaker's interest in anonymity, in light of the strength of the underlying claim." *In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp.

3d 868, 876. As explained below, the Subpoena to Twitter satisfies the applicable First Amendment standards, and the Court should accordingly grant this Motion to Compel.

### B. Notice Has Been Provided to the Anonymous Doe Defendant

As evidenced by the very nature of the Subpoena, Mr. Silva does not know the identity of the Defamatory Speaker and is thus limited in the ability to provide notice beyond the public docket filings he has already initiated. As that hurdle naturally presents itself whenever the issue before this Court arises, courts have determined the notice requirement is satisfied when the service provider (*e.g.*, Twitter) represents that it has transmitted notice to the anonymous speaker with the available information it has for the account. *See, e.g.*, *Krinsky v. Doe 6*, 159 Cal.App.4th 1154, 1171 (Cal. 2008) ("when ISPs [Internet Service Providers] and message-board sponsors (such as [Twitter]) themselves notify the defendant that disclosure of his or her identity is sought, notification by the plaintiff should not be necessary"); *see also Solers, Inc. v. Doe*, 977 A.2d 941, 954 (D.C. 2009) (collecting cases) ("it often will be simpler and more effective to require the recipient of the subpoena (who likely knows the identity of the anonymous defendant, or at least knows how to contact him) to provide such notice.").

Here, counsel for Mr. Silva coordinated with Twitter to provide the Defamatory Speaker with sufficient notice of the Initial Subpoena, this Subpoena, and this Motion so the speaker may have an opportunity to defend their anonymity. *See* Stolz Decl. ¶ 11; *see also* Duffy Decl. ¶ 7. Moreover, the Defamatory Speaker has had ample opportunity to make an appearance in either this action or the Florida Lawsuit, which they are likely aware of given the carefully coordinated nature of the defamation campaign. *See generally, e.g.*, *Krinsky*, 159 Cal. App. 4th at 1160 ("Doe" defendant anonymously appeared and moved to quash after receiving notice from online service provider). Accordingly, the Court should find that the notice requirement has been satisfied.

### C. Mr. Silva Alleges a *Prima Facie* Case Under Florida Law for Defamation, Defamation *Per Se*, and Defamation by Implication

The Florida Constitution expressly provides that one who abuses the right to freely speak, write, and publish on a subject shall be held responsible. *See* Fla. Const. Art. I, § 4. In Florida, an action for defamation will lie for "a false and unprivileged publication by letter, or otherwise,

which exposes a person to distrust, hatred, contempt, ridicule or obloquy or which causes such person to be avoided, or which has a tendency to injure such person in [their] office, occupation, business or employment." *Blake v. Giustibelli*, 182 So.3d 881, 884 (Fla. 4th DCA 2016) (citations and quotations omitted). Under Florida law, a plaintiff must satisfy the following elements to plead a *prima facie* defamation case: "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." *Jews For Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1106 (Fla. 2008).

Florida law also recognizes that "false statements which suggest that someone has committed a dishonest or illegal act are defamatory *per se.*" *Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1119 (S.D. Fla. 2021) (citations omitted). Thus, "when a statement is so obviously defamatory and damaging to one's reputation, it gives rise to an absolute presumption both of malice and damage." *Id.* (citations and quotations omitted). Moreover, Florida recognizes a cause of action for defamation by implication. *Jews For Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1100 (Fla. 2008). "Defamation by implication arises, not from what is stated, but from what is implied when a defendant (1) juxtaposes a series of facts so as to imply a defamatory connection between them, or (2) creates a defamatory implication by omitting facts . . . ." *Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1254 (S.D. Fla. 2014) (citing *Jews for Jesus*, 997 So.2d at 1106). Thus, "[d]efamation by implication is premised not on direct statements but on false suggestions, impressions and implications arising from otherwise truthful statements." *Corsi*, 519 F. Supp. 3d at 1124 (citation omitted).

### 1. Publication

To satisfy the *publication* element of defamation, a plaintiff must plead that "the defendant published a false statement about plaintiff to a third party." *Sirpal v. Univ. of Miami*, 684 F. Supp. 2d 1349, 1360 (S.D. Fla. 2010); *accord Klayman v. Jud. Watch, Inc.*, 22 F. Supp. 3d 1240, 1251 (S.D. Fla. 2014) ("The publication of a statement in a defamation claim only requires the dissemination of a false statement to a person other than the defamed person."). Put simply,

9

"[p]ublication of defamatory matter is communication of the statement to a third person." *Granda-*

*Centeno v. Lara*, 489 So.2d 142, 143 (Fla. 3d DCA 1986).

Here, several allegations satisfy the "publication" element. Initially, the Defendants sent a

mobile billboard around the crowded streets of South Miami Beach during the weekend of Miami

Art Basel featuring a large photo of Mr. Silva's face with text falsely accusing Mr. Silva of being a

sexual predator. Stolz Decl. ¶ 1, Ex. 1 at ¶¶ 31-36. In fact, Mr. Silva's seventeen-year-old son saw

the billboard and was consequently devastated. *Id.* at ¶ 36. Meanwhile, it is a matter of common

sense that other members of the public necessarily saw the billboard while paraded around South

Miami Beach during one of the most popular events of the year. Further, the mobile billboard

directed viewers' attention to Twitter and Twitter pages that the Defendants created, which contain

additional false and defamatory statements. *Id.* at ¶ 1, Ex. 1, at ¶ 4.

The defamatory statements on the Reddit forum independently constitute publication.

Under the guise of username u/SOSSilva7, Defendants posted defamatory remarks about

Mr. Silva on various Reddit forums, including r/NYC, r/Miami, r/Florida, r/Chicago, r/Illinois,

r/London, r/metoo, r/Modeling, r/sexualassault, r/TwoXChromosomes, r/abusesurvivors,

r/emotionalabuse. *Id.* at ¶¶ 23-24. Collectively, there are roughly 16.1 million members in these

Reddit forums. *Id.* at ¶ 24. Numerous Reddit users have directly engaged with Defendants'

account by commenting on and "liking" posts that contain false and defamatory statements about

Mr. Silva. Stolz Decl. ¶ 1. Additionally, Defendants created and assigned themselves as the

moderator of a Reddit forum titled r/SOSSilvaSurvivors for which it garnered a few "followers"

and posted more false and defamatory statements about Mr. Silva while tagging other popular

Reddit forums to deliberately ensure that followers of those forums would see the statements. *Id.*

¶ 1, Ex. 1, at ¶¶ 25-26.

Similarly, Defendants published false and defamatory statements on the Twitter account

with the handle @SOSSilva7. *Id.* ¶ 1, Ex. 1 at ¶¶ 28-30. As depicted in the Complaint, each

defamatory tweet was published directly to various media outlets by tagging them in the posts: the

Miami Herald, Miami New Times, Miami Beach News, and the account for the international arts

festival, Art Basel. *Id.* ¶ 29. Finally, the Defendants created a website called "sossilva.org"

NOTICE OF MOTION AND MOTION TO COMPEL TWITTER
TO RESPOND TO SUBPOENA; MPA IN SUPPORT

wherein they published more false and defamatory statements about Mr. Silva. Id. ¶ 20-22. The website and its tortious contents are available to members of the public, some of whom have viewed it and reshared the link to the website on social media platforms like Twitter.

Accordingly, Mr. Silva has demonstrated a sufficient evidentiary basis for believing the Defendants *published* the false and defamatory statements about him.

### 2.   <u>Falsity</u>

Under Florida law, the element of *falsity* is satisfied by showing that the defamatory statement is a factual assertion that is "capable of being proved true or false on a core of objective evidence," rather than a statement of pure opinion. *See Skupin v. Hemisphere Media Grp., Inc.*, 314 So.3d 353, 356 (Fla. 3d DCA 2020); *see also Friedgood v. Peters Pub. Co.*, 521 So.2d 236, 242 (Fla. 4th DCA 1988) ("[A] false statement of fact is absolutely necessary if there is to be recovery in a defamation action.") (citation omitted).[8] When the claim is for defamation by implication, falsity is also established when a defendant creates a defamatory implication by juxtaposing or omitting certain facts. *See Klayman*, 22 F. Supp. 3d at 1254.

The statements at issue are textbook examples of factually false statements subject to a claim for defamation under Florida law. Specifically, the statements on the Website, Reddit, and Twitter pages that falsely accuse Mr. Silva of engaging in sexual misconduct with young women—particularly within the modeling industry—are "capable of being proved true or false on a core of objective evidence." The statements—on their face—falsely accuse Mr. Silva of egregious criminal acts that are capable of being proven that they did not occur as a matter of fact. Likewise, the *context* of the statements suggests that Mr. Silva committed egregious criminal acts of sexual misconduct. The statements falsely and outrageously liken him to disgraced convicted sex offender, Jeffry Epstein. In sum, the defamatory statements about Mr. Silva constitute egregious statements of fact that are capable of being proven false based on objective evidence.[9]

---

[8] Significantly, courts recognize "there is no constitutional value in false statements of fact." *Morse v. Ripken*, 707 So.2d 921, 922 (Fla. 4th DCA 1998) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974)).

[9] Notably, as discussed *infra*, Section E, the information in Twitter's possession regarding the identity of the Defamatory Speaker is essential in affording Mr. Silva his due process right to

1    Accordingly, Mr. Silva has demonstrated a sufficient evidentiary basis that the defamatory

2    statements about him are *false* statements of fact "capable of being proved true or false on a core

3    of objective evidence."

4              **3.    Defamation _Per Se_: Malice, Damages, Defamatory**

5    In Florida, when a false statement suggests that an individual has committed a dishonest or

6    illegal act, it is considered "so obviously defamatory and damaging to one's reputation" that it

7    gives rise to an "absolute presumption" that the third and fourth elements of defamation—*malice*

8    and *damages*—have been satisfied. *Corsi*, 519 F. Supp. 3d at 1119 (citations and quotations

9    omitted).  "[A] publication is libelous per se, or actionable per se, if, when considered alone

10   without innuendo: (1) it charges that a person has committed an infamous crime; (2) it charges a

11   person with having an infectious disease; (3) it tends to subject one to hatred, distrust, ridicule,

12   contempt, or disgrace; or (4) it tends to injure one in his trade or profession." *Blake v. Giustibelli*,

13   182 So.3d 881, 884 (Fla. 4th DCA 2016) (citations omitted).

14   Here, the pervasive and carefully coordinated efforts underlying Defendants' actions

15   demonstrate that they knowingly published the egregious falsehoods about Mr. Silva. In any

16   event, Defendants' accusations are defamatory *per se* because they blatantly accuse Mr. Silva of

17   committing "crimes" and some of the most infamous crimes conceivable involving sexual

18   misconduct. Not to mention, the Website post also accuses him of bribery. Further, the defamatory

19   statements falsely liken him to the conduct of Jeffry Epstein—one of the most notorious sex

20   offenders in American history. Finally, the statements falsely accuse Mr. Silva of committing

21   these abhorrent acts against "young women" in the modeling industry, which undeniably has a

22   tendency to injure him in his profession as the owner of the model and talent agency, Select Model

23   Management. Stolz Decl. ¶ 1, Ex. 1 at ¶ 15.

24   Accordingly, Mr. Silva has shown a sufficient evidentiary basis that the Defendants'

25   accusations about him are defamatory *per se* and, alternatively, are malicious and defamatory

26

27

28   decisively establish the falsity of the defamatory statements about him in a court of law.

statements that caused harm to Mr. Silva's family, goodwill, and his personal and professional reputation.

**D.    Mr. Silva Alleges a *Prima Facie* Case Under Florida Law for Intentional Infliction of Emotional Distress ("IIED") and Stalking (Fla. Stat. § 784.0485)**

**1.    IIED**

To state a *prima facie* claim for IIED in Florida, one must show that "(1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." *Williams v. Worldwide Flight SVCS., Inc.*, 877 So.2d 869, 870 (Fla. 3d DCA 2004). As established above, accusing someone of criminal misconduct is extreme and outrageous conduct that goes beyond the bounds of all human decency. In short, the false and defamatory statements discussed above have personally harmed Mr. Silva to an immeasurable degree.

Additionally, the nature of the carefully-crafted campaign to launch a concerted attack on Mr. Silva is extreme and outrageous in and of itself—from making a website, to parading a mobile billboard around South Miami Beach with Mr. Silva's face on it during one of the busiest weekends of the year, labeling him a predator, to the other egregious conduct alleged against Defendants in the Complaint. This conduct clearly attempts to seriously injure Mr. Silva's status, goodwill, and reputation, and constitutes extreme and outrageous behavior that goes beyond the bounds of human decency.

**2.    Stalking (Fla. Stat. § 784.0485)**

Finally, Mr. Silva pleads a *prima facie* claim for stalking against Defendants under section 784.0485(1), Florida Statutes. To plead a cause of action under section 784.0485(1), a party must demonstrate the defendant engaged in a course of harassing conduct that is (i) specifically directed at plaintiff, (ii) causes "substantial emotional distress to plaintiff, and (iii) serves no legitimate purpose. *See Ozyesilpinar v. Jalali*, 325 So.3d 289, 293 (Fla. 3d DCA 2021).

Here, as previously explained, the Defendants engaged in an elaborate course of conduct designed to harass Mr. Silva to cause him substantial emotional distress. The mobile billboard driven around the crowded streets of South Miami Beach featured a large photo of Mr. Silva's face with text that knowingly propagated false accusations about alleged predation (Stolz Decl.

¶ 1, Ex. 1 at ¶¶ 31-36), as viewed by Mr. Silva's seventeen-year-old son who was devastated. *Id.* at ¶ 36. Additionally, the Twitter account made a deliberate effort to tag media outlets and other pages that are relevant to personal and professional matters in Mr. Silva's life.

Overall, the defamation campaign has been relentless and ongoing for several months; it transcends numerous platforms and serves no legitimate purpose other than to harass and unlawfully injure Mr. Silva.

> **E.    The Balance of the Equities Favors Disclosure of Basic Identifying Information**

Finally, the balance of equities and interests of justice favor disclosure of the basic identifying information sought in the Subpoena because the potential harm to Mr. Silva, his family, and his personal and professional reputation outweighs the Defamatory Speaker's interest in impenetrable anonymity.

First, as established above, Mr. Silva, his family, and his businesses have already suffered, and will continue to suffer, serious harm with each day that passes without being able to identify the Defamatory Speaker. Second, obtaining the identity of the Defamatory Speaker from Twitter is "necessary to enable [Mr. Silva] to protect against or remedy serious wrongs" by way of the Florida Lawsuit. *Music Group*, 82 F. Supp. 3d at 983-84 (quoting *Highfields*, 385 F. Supp. 2d at 976)). The requested discovery is essential to Mr. Silva's ability to move forward with the Florida Lawsuit and address the dispute with the necessary parties. Without the identity of the Defamatory Speaker, Mr. Silva will not be able to serve him in the Florida Lawsuit, which in turn will deny adjudication and justice on the merits of Mr. Silva's claims. In short, without the requested information from Twitter, Mr. Silva's due process rights will continue to be prejudiced.

Additionally, as previously demonstrated, Mr. Silva has been working diligently to obtain the information from other sources. Yet Twitter is the only entity that can provide the important information requested in the Subpoena. The Subpoena is narrowly tailored to basic subscriber information (BSI) and proportional to the needs of the case, with any identifying information obtained from Twitter to be used solely for the purposes of identifying the Defamatory Speaker

and serving him with process in the Florida Lawsuit. While the true name of John Doe 3 is unknown to Plaintiff, this information is readily available to Twitter and should be produced.

Further, the equitable considerations underlying the Federal Rules of Civil Procedure support disclosure in this action. Notably, the Rules establish at the outset that they "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Thus, the equities further favor disclosure by Twitter pursuant to Rule 45 because any information potentially identifying a defendant in the underlying Lawsuit would unequivocally promote a more "just, speedy, and inexpensive" determination of the underlying Lawsuit. Absent the identity of the Defamatory Speaker, Mr. Silva would be forced to incur additional expense in attempting to track down the Defamatory Speaker's identity. Given the efforts undertaken to date by Mr. Silva to obtain this vital information, and the lack of success, it appears unlikely that this information will be obtainable from other sources. *See* Stolz Decl. ¶ 9, 12-13 19.

On the other hand, the Defamatory Speaker—Defendant John Doe 3—has a diminished interest in anonymity under the circumstances. First, as established above, the speech he espoused against Mr. Silva on Twitter, as well as the other speech alleged in the Complaint that he was likely involved with publishing, is unprotected speech and is defamatory *per se*. Second, the interests of justice and principles of equity favor that the Defamatory Speaker be identified so he may answer for his egregious misdeeds in court. Likewise, the interests of justice and principles of equity favor production of the identifying information so the Speaker may be properly served with process in the underlying Lawsuit.  Also, the anonymous Speaker is named as a Doe defendant in the underlying Florida Lawsuit, rather than a witness or third-party caught up in another's unlawful conduct. Moreover, equity favors disclosure where, as here, the need to obtain identifying information from a service provider such as Twitter is due to the Defamatory Speaker's own actions (or those of his accomplices) in purposefully concealing their identities.

In sum, the balance of the equities weighs decisively in Mr. Silva's favor based on the Defamatory Speaker's carefully-coordinated and anonymous campaign to defame Mr. Silva.

IV.     **CONCLUSION**

For the foregoing reasons, Mr. Silva respectfully requests that the Motion to Compel be granted and that the Court issue an order compelling Twitter to comply with the Subpoena and promptly produce the requested information regarding the identity of the Defamatory Speaker.


DATED:  April 20, 2023                         BARTKO ZANKEL BUNZEL & MILLER
                                               A Professional Law Corporation


                                               By:     _/s/ Kerry L. Duffy_____
                                                       Kerry L. Duffy
                                                       Attorneys for Plaintiff RICCARDO SILVA