1  BENJAMIN K. RILEY (SBN 112007)
     *briley@bzbm.com*
2  KERRY L. DUFFY (SBN 233160)
     *kduffy@bzbm.com*
3  BARTKO ZANKEL BUNZEL & MILLER
   A Professional Law Corporation
4  One Embarcadero Center, Suite 800
   San Francisco, California 94111
5  Telephone: (415) 956-1900
   Facsimile:  (415) 956-1152
6
   Attorneys for Plaintiff
7  RICARDO SILVA

8                 UNITED STATES DISTRICT COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10

11                                    | Case No. 3:23-mc-80122

12                                    | (Originating Case: S.D. Fla. 1:22-cv-24262-
                                        RKA)
13
   *IN RE: SUBPOENA TO X CORP., Successor* | **DECLARATION OF ADAM STOLZ IN**
14 *in Interest to TWITTER, INC.*          | **SUPPORT OF PLAINTIFF RICCARDO**
                                             **SILVA'S MOTION TO COMPEL THIRD-**
15                                           **PARTY TWITTER, INC. TO RESPOND**
                                             **TO SUBPOENA**
16
17                                    | Date:  TBD
                                        Time:  TBD
18                                      Ctrm.: TBD

19

20        I, Adam Stolz, declare as follows:

21        1.        I am an attorney at law who is licensed to practice in the State of Florida.  I am a

22 member of the law firm Lash Goldberg LLP, which serves as limited co-counsel for Riccardo

23 Silva ("Plaintiff" or "Mr. Silva") in a lawsuit currently pending in the United States District Court

24 for the Southern District of Florida under Case No. 1:22-cv-24262-RKA ("Florida Lawsuit").  The

25 Florida Lawsuit addresses an elaborate defamation and harassment campaign against Mr. Silva

26 involving numerous false, defamatory, extreme and outrageous statements published across a

27 website, Twitter.com, Reddit.com, and a mobile billboard, as detailed in the Complaint, and which

28 statements remain publicly available on said platforms, including Twitter.com.  Attached hereto as

3036.000/1840578.1                          1

**Exhibit 1** is a true and correct copy of the Complaint filed in the Florida Lawsuit.

2.      In the Florida Lawsuit, I have responsibility for discovery requests to certain non-party entities, including X Corp., the successor in interest to Twitter, Inc. ("Twitter"), and therefore have personal knowledge of the facts set forth herein and could and would competently testify under oath in a court of law if called upon to do so.  I make this Declaration in support of Plaintiff's Motion to Compel Third-Party Twitter to Respond to Subpoena, filed concurrently herewith.

3.      Pursuant to this Court's Civil Local Rule 37, I have met and conferred on numerous occasions with counsel for Twitter, Jon Hawk, Esq.[1] and Kathryn Kuethman, Esq., regarding Twitter's objections to Plaintiff's subpoena for documents and information from Twitter regarding the identity of the user(s) or subscriber(s) who own(s) and operate(s) the Twitter handle or account, @SOSSilva7 (the "Handle"), given the false and defamatory statements published by "John Doe 3" (and potentially other Defendants) on Twitter's platform under the Handle.

4.      On February 10, 2023, I issued a subpoena to Twitter (the "Initial Subpoena") for discovery sought in connection with the Florida Lawsuit.  Attached hereto as **Exhibit 2** is a true and correct copy of the Initial Subpoena.

5.      On February 17, 2023, Twitter responded to the Initial Subpoena with numerous written objections.  Attached hereto as **Exhibit 3** is a true and correct copy of Twitter's correspondence to my firm objecting to the Initial Subpoena.

6.      On February 22, 2023, I had a telephonic conference with Mr. Hawk to discuss Twitter's objections, and we were able to clarify and dispense with several of those objections. Nevertheless, a few remained, including Twitter's objection on First Amendment grounds.

7.      The next day, on February 23, 2023, I followed up via email with Mr. Hawk asking whether Twitter was willing to reconsider its position of non-compliance, advising "we have no other way of obtaining the information and require it for the limited purposes of service and

---

[1] The subpoena at-issue here was directed at Twitter, Inc.  I understand from Mr. Hawk that "X Corp." has since become the successor in interest to Twitter, Inc., and is the entity objecting to the subpoena. To avoid confusion, all references herein are to "Twitter."

1  identification so the proper individual(s) can appear before the court and participate in the

2  [Florida] litigation."  Shortly thereafter, Mr. Hawk and I had another telephonic meet-and-confer

3  where I clarified the narrow scope of the requested discovery and the circumstances of the Florida

4  Lawsuit in an effort to resolve Twitter's remaining objections.

5         8.     On March 2, 2023, Mr. Hawk and I reconvened on a telephonic meet-and-confer

6  and attempted to resolve the remaining objections.  Although we made substantial progress, Mr.

7  Hawk advised that Twitter remained unwilling to compromise on its First Amendment objection.

8         9.     Throughout the course of my work on this case, I gained familiarity with and

9  knowledge about the extensive efforts undertaken by Mr. Silva to identify the Doe Defendants in

10  the Florida Lawsuit, which included subpoenaing multiple third parties and engaging a private

11  investigator, all of which are now a matter of public record as detailed in an "Unopposed Motion

12  to Re-Open Case" in the Florida Lawsuit, which detailed Plaintiff's diligent efforts to identify the

13  anonymous John Does (*see* ECF Dkt. No. 23).  Attached hereto as **Exhibit 4** is a true and correct

14  copy of "Plaintiff Riccardo Silva's Unopposed Motion to Re-Open Case" from the Florida

15  Lawsuit (ECF Dkt. No. 23).[2]

16        10.    On March 30, 2023, I followed up via email to Mr. Hawk to advise that "we still

17  have been unable to obtain the necessary information regarding the [Doe] defendant's identity

18  from another source and are constrained to renew our request that Twitter provide it."

19        11.    The next day, on March 31, 2023, I telephonically met and conferred again with

20  Mr. Hawk in an effort to resolve Twitter's remaining objections.  In sum, to accommodate many

21  of Twitter's objections, I agreed to request California counsel to issue a new subpoena to Twitter

22  for documents and information with a place of compliance in San Francisco, California that

23  featured a modified scope (the "Subpoena").  In this meeting, Mr. Hawk confirmed to me that

24  Twitter would provide notice of the Subpoena to the anonymous user, as it had previously done

25  _____

26  [2] Although Exhibit 4 suggests that, at the time it was filed, Mr. Silva was in the process of
potentially identifying individuals potentially involved in the defamation campaign, the

27  subsequently obtained information unfortunately ruled out the suspects referenced therein.  Thus,
to date and despite his diligent efforts, Mr. Silva has not been able to identify the Doe Defendants,

28  including the Defamatory Speaker(s) behind the Twitter Handle.

1   for the Initial Subpoena.

2      12.      On March 31, 2023, I emailed counsel for Mobile Billboard, Inc.—the only

3   defendant in the Florida Lawsuit whose identity is currently known to Mr. Silva—to provide

4   notice and a copy of the Subpoena to be served on Twitter.  Mobile Billboards confirmed in

5   writing that it did not object to the Subpoena.  Attached hereto as **Exhibit 5** is a true and correct

6   copy of that email correspondence.

7      13.      All other defendants in the Florida Lawsuit are "Doe" Defendants whose identities

8   are unknown at this time.

9      14.      Attached hereto as **Exhibit 6** is a true and correct copy of the Subpoena issued on

10   April 3, 2023 to Twitter from this Court, which is the subject of Mr. Silva's pending Motion to

11   Compel against Twitter.

12      15.      On April 11, 2023, Mr. Hawk sent me Twitter's written objections to the California

13   Subpoena.  Attached hereto as **Exhibit 7** is a true and correct copy of Twitter's second objection

14   letter.

15      16.      On April 13, 2023, I engaged in another meet-and-confer over video-teleconference

16   (Zoom) with Mr. Hawk and Ms. Kuethman as a final attempt to resolve Twitter's objections.  I

17   clarified that Mr. Silva is only seeking non-content, basic subscriber information including IP

18   addresses for the Twitter Handle, and in turn Mr. Hawk confirmed that Twitter's only objection

19   that would need to be addressed by a court on a motion to compel was its objection on First

20   Amendment grounds.  As such, with respect to the First Amendment issue, the parties mutually

21   agreed they had exhausted their extensive meet-and-confer efforts and that such further efforts

22   would be futile.

23      17.      Attached hereto as **Exhibit 8** is a true and correct copy of the email chain

24   containing the meet-and-confer correspondence described above between myself and Mr. Hawk,

25   counsel for Twitter, for the time period of February 17, 2023 to April 7, 2023 (omitting

26   attachments).

27

28

1     18.     To date, Twitter has not produced any discovery requested in the Subpoena.

2

3     Under penalties of perjury under the laws of the United States of America, I declare that I

4  have read the foregoing statement and it is true and accurate.

5     Executed on this 20th day of April 2023 in Miami, Florida.

6

7                                              By:     /s/ Adam J. Stolz

8                                                      Adam J. Stolz

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 1

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| RICCARDO SILVA, | |
| Plaintiff, | |
| vs. | |
| JOHN DOE 1 (OWNER(S) OF WEBSITE SOSSILVA.ORG); | Case No.: 1:22-cv-24262-RKA |
| JOHN DOE 2 (OWNER(S) OF REDDIT USERNAME @SOSILVA7); | |
| JOHN DOE 3 (OWNER(S) OF TWITTER HANDLE @SOSILVA7); | |
| JOHN DOE 4; | |
| MOBILE BILLBOARDS, INC., | |
| Defendants. | |

## COMPLAINT

Plaintiff Riccardo Silva ("Silva"), hereby sues Defendants John Doe 1, John Doe 2, John Doe 3, and John Doe 4, all of whom may be a single person or may be more than one person (the "John Doe Defendant(s)"), and Mobile Billboards, Inc. (the "Mobile Billboard Defendant," and together with the John Doe Defendant(s), the "Defendants") and alleges:

### INTRODUCTION

1.     This case involves a defamatory campaign waged by the John Doe Defendant(s), with the assistance of the Mobile Billboard Defendant, against Mr. Silva, a successful businessman, a philanthropist, and a devoted husband and father, which campaign was designed to damage Mr. Silva both personally and professionally by publishing false and outrageous accusations of criminality against him.

2.     The purpose of this defamatory campaign is unknown to Mr. Silva, as the John Doe Defendants have hidden their identity or identities, but the campaign was designed to cause—and has in fact caused—grave damage to Mr. Silva and his family.

3.     Indeed, the Defendants sent a mobile billboard around South Miami Beach during the weekend of Miami Art Basel featuring a large photo of Mr. Silva's face with text knowingly falsely accusing Mr. Silva of being a "predator." Mr. Silva was in Miami at the time with his wife and children, and his seventeen-year-old son saw the billboard. This has, not surprisingly, caused devastation to Mr. Silva and his family.

4.     The mobile billboard directed viewers' attention to Twitter and Reddit pages, created by the John Doe Defendant(s), which contain additional knowingly false and defamatory statements. The John Doe Defendant(s) have also created a website that includes still more knowingly false and defamatory statements and accusations against Mr. Silva.

5.     The Defendants have caused and are continuing to cause grave damage to Mr. Silva by publishing this knowingly false and defamatory material accusing Mr. Silva of criminal and deviant conduct.  Mr. Silva and his family are in fear of their safety and security as a result of the Defendants' harassment and defamatory campaign.

## JURISDICTION AND VENUE

6.     The Court has subject matter jurisdiction over this case because the amount of damages sought by Mr. Silva, exclusive of any attorney's fees, costs, and expenses, exceeds $75,000.

7.     This Court has personal jurisdiction over each of the Defendants in that, at all relevant times, they (a) resided in Florida and/or (b) committed tortious acts in Florida.

8.     Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1) and/or 1391(b)(2)

Greenberg Traurig, P.A. ■ 333 S.E. 2nd Avenue, Suite 4400 ■ Miami, Florida 33131 ■ Tel 305.579.0500 ■ Fax 305.579.0717 ■ www.gtlaw.com

because at least one of the Defendants reside in this District and all Defendants are residents of Florida, and/or because a substantial part of the events giving rise to the below claims occurred in this District.

## THE PARTIES

9. Mr. Silva is an individual whose domicile is London, United Kingdom. Mr. Silva owns a condominium in South Miami Beach.

10. Defendant John Doe 1 is the owner of the website sossilva.org. Upon information and belief, John Doe 1 resides in the State of Florida. John Doe 1 committed the tortious acts described herein in the State of Florida. Notably, as the allegations *infra* show, John Doe 1 may be one or more individuals and may be the same individual as John Doe 2, 3, or 4.

11. Defendant John Doe 2 is the owner of the Reddit username @SOSilva7. Upon information and belief, John Doe 2 resides in the State of Florida. John Doe 2 committed the tortious acts described herein in the State of Florida. Notably, as the allegations *infra* show, John Doe 2 may be one or more individuals and may be the same individual as John Doe 1, 3, or 4.

12. Defendant John Doe 3 is the owner of the Twitter handle @SOSSilva7. Upon information and belief, John Doe 3 resides in the State of Florida. John Doe 3 committed the tortious acts described herein in the State of Florida. Notably, as the allegations *infra* show, John Doe 3 may be one or more individuals and may be the same individual as John Doe 1, 2 or 4.

13. Defendant John Doe 4 is the individual who hired the billboard from the Mobile Billboard Defendant. Upon information and belief, John Doe 4 resides in the State of Florida. John Doe 4 committed the tortious acts described herein in the State of Florida. Notably, as the allegations *infra* show, John Doe 4 may be one or more individuals and may be the same individual as John Doe 1, 2, or 3.

14. The Mobile Billboard Defendant is a Florida corporation with principal offices in

3

Parrish, Florida, and is duly authorized to conduct business in the State of Florida. The Mobile Billboard Defendant offers mobile billboard services—i.e., a billboard that is placed on the rear of a motor vehicle and is observable by other motorists and pedestrians. The Mobile Billboard Defendant committed the tortious acts described herein in the State of Florida.

**FACTUAL BACKGROUND**

15.     Mr. Silva is a husband, a father, and a renowned businessman and investor. He owns the investment company, Silva International Investments, an investment company that manages and invests in various sectors—media, technology, sports, entertainment, the arts, and real estate, to name a few. He also owns the model and talent agency, Select Model Management. In addition, he is the president and co-owner of the American professional soccer team, Miami FC, and an investor in and co-owner of AC Milan, one of the most successful soccer teams in the world.

16.     Mr. Silva is a devoted philanthropist, as well. He donates substantial time and money to various causes. He has made significant donations across a range of projects in Europe, Africa, and the United States (particularly, Miami, Florida), including to Florida International University ("FIU"), Mount Sinai Medical Center, Gulliver Schools, St. Stephen's Episcopal Day School, the Bass Museum of Art, the New World Symphony, Play for Change, The Foundation for AIDS Research, Elton John AIDS Foundation, the Novak Djokovic Foundation, Movimiento Shalom, and the Bali Street Kids Project. In recognition of Mr. Silva's contributions to FIU and, more generally, to the city of Miami, FIU named its football and soccer stadium—Riccardo Silva Stadium—after him.

17.     Mr. Silva is an upstanding, law-abiding citizen. And yet, to his shock, the Defendants have recently set forth a damaging campaign against him, designed to damage him

personally and professionally by accusing him of conduct that is categorially false. Specifically, the Defendants have falsely accused Mr. Silva of serial sexual abuse and sexual harassment, bribery, and other falsely alleged conduct. Outrageously, the Defendants have falsely compared Mr. Silva to the likes of Jeffrey Epstein.

18.     Each and every one of these accusations against Mr. Silva is knowingly **false**—fabricated by the Defendants to damage and destroy Mr. Silva's personal and professional life.

19.     Mr. Silva seeks compensatory and punitive damages resulting from the harm that the Defendants' defamatory campaign has caused him and will continue to cause him.

### The Website

20.     John Doe 1 created the website sossilva.org (the "Website") on September 8, 2022.

21.     The Website contains only the following accusations:

> We, the survivors of sexual violence and exploitation at the hands of Riccardo Silva of Select Model Management, Silva International Investments, and other companies, have built this site to tell our story to the world, For years, Silva has used his business interests to further his own dark desires, As young women in the modeling industry, we knew that people like Riccardo Silva were out there, looking to prey on us through a combination of intimidation, bribery and emotional abuse. Silva was and is all that and more. He declared himself "untouchable" to almost all of us. He laughed when confronted with the toll his abuse had taken. He pursued us in every way and tried to destroy us when we resisted.
>
> Like  Epstein before him, he sheltered himself from any blowback through his wealth and his connections.Today we say no more. Today, we name Riccardo Silva as a serial sexual predator. We will tell our story to the world. We will not rest until the world knows who Riccardo Silva really is. Not the patron of the arts or football enthusiast or business  "mogul", but a thug. An animal. A coward. An absentee father to children he denies.Your crimes will be exposed.
>
> We demand justice. We will not rest until you acknowledge the havoc you have brought upon the lives of so many.

22.     Each and every one of these accusations made by John Doe 1 on the Website against Mr. Silva is knowingly false, defamatory, and extreme and outrageous.

### The Reddit Campaign

23.     John Doe 2 created the Reddit username u/SOSilva7 on September 8, 2022—the

5

same day the Website was created.

24.     Throughout October 2022, u/SOSilva7 made the following post (the "Reddit Posts") across several Reddit forums, including r/NYC, r/Miami, r/Florida, r/Chicago, r/Illinois, r/London, r/metoo, r/Modeling, r/sexualassault, r/TwoXChromosomes, r/abusesurvivors, r/emotionalabuse.  Together, there are roughly 16.1 million members in these Reddit forums:

"TW- my story of abuse and harassment.

Hello All,

I was in the industry for years and left after the incident I've described below. Currently, my goal is to make aspiring models and others interested in the industry aware that this behavior occurs and is far more commonplace than most think. Everything here happened to me and unfortunately was experienced by several people.

A few years ago, I began working with Select Model Management. They had (and objectively have) a decent reputation in a industry where we all pretty much realize it is only a matter of time until we experience something creepy, unwelcomed or downright horrible.

Over the course of my work, I interacted with Riccardo Silva. He's European (Italian I think) and married. Extremely wealthy. Multiple businesses and everything you'd expect. We were at several events together and he was always surrounding himself with my colleagues, other women from other agencies or just women in general. His vibe was . . . neutral but hostile? If that makes sense? Not a huge change from most in the industry, so I really just went about my work.

Over time, I saw him at other events more frequently, we made small talk and that was about it. One time he touched my shoulder with unusual force, but I didn't think much of it. Then he started reaching out. This was unsettling, because I certainly didn't expect it and while the agency had all of my info, you don't expect someone who is essentially your boss to reach out socially.

It went from a normal, 'hey, how are you', and got weird immediately after. Asking me what I liked sexually. Telling me his body count and who specifically in our agency that he slept with. The 'obvious benefits' of me sleeping with him. My brain just blanked. I didn't really respond initially. This had happened so often before at other places, and a quick 'fck off!' usually helped, but not with a person at this level and not there. I just didn't know what to do.

He kept it up, it became almost an everyday thing. I started to respond and tell him

6

this made me uncomfortable. He ignored it every time. When I saw him, he'd touch me and say things under his breath. If I was talking to other men, he'd interject himself into the conversation. All the while, he kept harassing me. I mentioned it to other people and they'd shrug, or nod, share their experience and tell me to stay as far away from him as possible. It made me physically sick. I lost weight, lost interest in a lot of things. One of the worst parts was seeing him present this image to the outside world that he was a good guy, pictures with his family playing soccer, art donations, etc. Meanwhile, he tormented me at the same time.

He ramped it up and got angry. If I wouldn't sleep with him on my own, I'd 'do it for money, of course' Constant propositions, across phone, text, dm, etc. Shaming me. Saying he'd destroy me. Destroy my career. Shame my family, especially a family member that was very ill at the time. All the things I feared, however irrational, he pushed on and made me feel like shit. It came to a head when I saw him for the last time and he grabbed me so hard on my arm it left bruises. Told me he 'wasn't interested in trash like me', that he just wanted to toy with me, that I wasn't pretty enough anyway.

I quit. Soon after, a flood of people reached out to me, sharing their experiences, which were identical to my own in some cases, and far, far, far worse in others. He harassed, intimidated, and violently abused several women. He abused his position of power to abuse others.

My life was pretty beautiful, and it still is, but despite therapy and wonderful family and friends, Riccardo's harassment and abuse changed who I am, and how I interact with people in every part of my life.

It made me harder, but I'm determined to use that to help others. To make people like him know that they can't treat people like that and to call that abuse out for others.

If you have experienced anything like this, I send you strength and love. Thank you all for reading."

25.     In December 2022, John Doe 2 created and assigned itself as the moderator of the

Reddit forum r/SOSSilvaSurvivors (the "Reddit Forum").

26.     In the Reddit Forum, u/SOSilva7 made the following post:

7



27.     Each and every one of these accusations made by John Doe 2 on Reddit against Mr. Silva is knowingly false, defamatory, and extreme and outrageous.

**The Twitter Campaign**

28.     In September 2022, John Doe 3 created the Twitter account @SOSSilva7, which is based out of Miami, Florida, as the account's Twitter page shows.   The biography reads: "Survivors Of Silva- The survivors of sexual violence and intimidation at the hands of Riccardo Silva of Select Model Management/Silva International Investments":

8



29.     On December 3, 2022, John Doe 3 posted a five-tweet thread, tagging media entities, such as the Miami Herald, Miami New Times, and Miami Beach News, along with the Twitter account for the international arts festival, Art Basel, which is located in Miami, Florida. The thread contained similar defamatory and false accusations to those made by John Doe 1 on the Website and by John Doe 2 on Reddit:

9



**SOSSilva**
@SOSSilva7                                        •••

After years of gathering our courage, we are finally
ready to tell our stories of abuse, harassment and
degradation at the hands of Riccardo Silva, owner of
@sportbusiness and @themiamifc. A thread 1
@MiamiHerald @MiamiNewTimes @MiamiBeachNews
@ArtBasel

10:05 AM · Dec 3, 2022



**SOSSilva**
@SOSSilva7                                        •••

Silva used the modeling industry as a vehicle to feed
his desires to harass, intimidate and abuse young
women. He used every method possible to make us
feel insignificant and small
2
@MiamiHerald @MiamiNewTimes @MiamiBeachNews
@ArtBasel

10:08 AM · Dec 3, 2022



**SOSSilva**
@SOSSilva7                                        •••

After one of us told her story on Reddit, there was an
outpouring of support, love, advice and grace from
other victims of abuse and intimidation. The love we
were shown gave us the strength to be here in this
place now
3
@MiamiHerald @MiamiNewTimes @MiamiBeachNews
@ArtBasel

10:10 AM · Dec 3, 2022

10





30.     Like the false accusations against Mr. Silva on the Website and on Reddit, John

Doe 3's accusations of grotesque conduct against Mr. Silva on Twitter are knowingly false,

defamatory, and extreme and outrageous.

### The Mobile Billboard Campaign

31.     In or around December 2, 2022, Defendant John Doe 4 purchased a mobile

billboard (the "Billboard") from the Mobile Billboard Defendant.

32.     Defendant John Doe 4 hired the Mobile Billboard Defendant to drive around the

location of Mr. Silva's condominium he owns in South Miami Beach on Saturday, December 3,

2022, which was the weekend of Miami Art Basel, one of the busiest weekends of the year in

Miami Beach.

11

33.     On the Billboard, the Defendants falsely accused Mr. Silva of being a "predator on the loose in Miami." Observers of the Billboard are further directed to the above-referenced Twitter handle, @SOSSilva7, and Reddit Forum, r/SOSSilvaSurvivors:



34.     The Defendants' accusation that Mr. Silva is a "predator" is knowingly false,

12

defamatory, and extreme and outrageous. And, as alleged *supra*, the accusations against him on Twitter and Reddit are knowingly false, defamatory, and extreme and outrageous.

35. The Mobile Billboard Defendant knew or should have known the accusations against him were false or, at least, the Mobile Billboard Defendant recklessly disregarded the falsity of the accusations.

36. Mr. Silva's seventeen-year-old son witnessed the truck driving around the neighborhood of Mr. Silva's South Beach condo. He was devasted to see his father portrayed in this way. This has caused extreme emotional distress to Mr. Silva and his family.

37. Mr. Silva has suffered damages as a result of the Defendants' knowingly false, defamatory, extreme and outrageous, and injurious campaign against him. In particular, Mr. Silva has suffered, and will continue to suffer, monetary damages, including in connection with his reputation and business interests, and severe emotional distress. In addition, Mr. Silva fears for his and his family's safety and security, given the defamatory and harassing campaign against him.

38. All conditions precedent to the maintenance of this action have occurred, been performed, complied with, or waived.

## COUNT I: DEFAMATION (LIBEL)
### (Against All Defendants)

39. Mr. Silva incorporates as if fully set forth herein paragraphs 1 through 38 above.

40. The Defendants published to millions of third parties knowingly false, defamatory statements of and concerning Mr. Silva on the Website, Twitter, Reddit, and the Billboard, as outlined *supra*.

41. The Defendants knew that said statements of and concerning Mr. Silva were false, recklessly disregarded the falsity of said statements, and/or were negligent as to the falsity of said statements.

13

42.     As a result of the Defendants' wide publication of the above false statements, Mr. Silva has suffered damages, including without limitation, monetarily, to his reputation, and to his business interests.

WHEREFORE, Mr. Silva demands judgment against the Defendants for money damages, pre- and post-judgment interest, and such other relief as the Court deems just and proper. In addition, Mr. Silva seeks punitive damages pursuant to Fla. Stat. § 768.72.

## COUNT II: DEFAMATION (LIBEL) PER SE
### (Against All Defendants)

43.     Mr. Silva incorporates as if fully set forth herein paragraphs 1 through 42 above.

44.     The Defendants published to millions of third parties knowingly false, defamatory statements of and concerning Mr. Silva on the Website, Twitter, Reddit, and the Billboard, as outlined *supra*.

45.     Those false, defamatory statements charged that Mr. Silva committed infamous crimes and/or felonies, including without limitation, sex crimes and bribery. In addition, the false, defamatory statements subject Mr. Silva to hatred, distrust, ridicule, contempt, and/or disgrace. Finally, the false, defamatory statements harm Mr. Silva in his many business ventures articulated *supra*.

46.     Accordingly, Mr. Silva has suffered damages, including without limitation, monetarily, to his reputation, and to his business interests.

WHEREFORE, Mr. Silva demands judgment against the Defendants for money damages, pre- and post-judgment interest, and such other relief as the Court deems just and proper. In addition, Mr. Silva seeks punitive damages pursuant to Fla. Stat. § 768.72.

Greenberg Traurig, P.A. ■ 333 S.E. 2nd Avenue, Suite 4400 ■ Miami, Florida 33131 ■ Tel 305.579.0500 ■ Fax 305.579.0717 ■ www.gtlaw.com

## COUNT III: DEFAMATION (LIBEL) BY IMPLICATION
**(Against All Defendants)**

47.     Mr. Silva incorporates as if fully set forth herein paragraphs 1 through 46 above.

48.     Mr. Silva asserts Count III in the alternative to Counts I and II.

49.     To the extent that one or more of the Defendants' statements on the Website, Twitter, Reddit, and/or the Billboard, which were published to millions of people, are determined to be true, all resulting suggestions, impressions, and/or implications that Mr. Silva engaged in any criminal or deviant misconduct are false.

50.     The false suggestions, impressions, and/or implications that Mr. Silva engaged in any criminal or deviant misconduct have caused serious harm to Mr. Silva.

51.     Accordingly, Mr. Silva has suffered damages, including without limitation, monetarily, to his reputation, and to his business interests.

WHEREFORE, Mr. Silva demands judgment against the Defendants for money damages, pre- and post-judgment interest, and such other relief as the Court deems just and proper. In addition, Mr. Silva seeks punitive damages pursuant to Fla. Stat. § 768.72.

## COUNT IV: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
**(Against All Defendants)**

52.     Mr. Silva incorporates as if fully set forth herein paragraphs 1 through 51 above.

53.     The Defendants engaged in extreme and outrageous conduct, including without limitation, by setting forth an internet and billboard campaign to falsely accuse Mr. Silva of heinous, criminal conduct—being compared to the likes of Jeffrey Epstein. Engaging in a campaign to publish knowingly false and defamatory accusations of the most grotesque order goes beyond all possible bounds of decency and such ruthless attacks are intolerable in a civilized society.

15

54.     The Defendants engaged in such extreme and outrageous conduct with the intent to ruin Mr. Silva's personal and professional life, and thus to cause him severe emotional distress.

55.     At the very least, the Defendants' extreme and outrageous conduct was done with reckless disregard to the probability of causing Mr. Silva severe emotional distress.

56.     Mr. Silva has suffered severe emotional distress, and will continue to suffer severe emotional distress, as a result of the Defendants' extreme and outrageous conduct.  In addition, the mobile billboard was seen by Mr. Silva's seventeen-year-old son, a likely, and indeed intended, consequence of having the mobile billboard driven outside of Mr. Silva's condominium. Mr. Silva's son was extremely distraught by what he saw, which has caused Mr. Silva severe emotional distress at the damage this defamatory publication has inflicted on his entire family.

WHEREFORE, Mr. Silva demands judgment against the Defendants for money damages, pre- and post-judgment interest, and such other relief as the Court deems just and proper.  In addition, Mr. Silva seeks punitive damages pursuant to Fla. Stat. § 768.72.

### COUNT V: INJUNCTION – STALKING, § 784.0485(1), FLA. STAT.
### (Against All Defendants)

57.     Mr. Silva incorporates as if fully set forth herein paragraphs 1 through 56 above.

58.     The Defendants have willfully, maliciously, and repeatedly harassed Mr. Silva through their harassment and defamatory campaign against him, both online and in person.

59.     Mr. Silva has suffered severe emotional distress, and will continue to suffer severe emotional distress, as a result of the Defendants' campaign.  In addition, Mr. Silva and his family have suffered from grave concerns to their safety and security as a result of the Defendants' harassment and defamatory campaign.

60.     The Defendants' harassment and defamatory campaign serves no legitimate purpose, as it is based on knowing falsehoods.

16

61.     Mr. Silva has a clear legal right to not be harassed and defamed in violation of the law.

62.     There is no adequate remedy at law for the further violation of this right, necessitating this Court's intervention to enjoin the Defendants from continuing their campaign.

63.     Should the Court fail to permanently enjoin the Defendants from continuing their campaign, Mr. Silva will continue to suffer severe emotional distress and he and his family will continue to be in grave fear for their safety and security.

WHEREFORE, Mr. Silva demands an order permanently enjoining the Defendants from continuing their harassment and defamatory campaign, and such other relief as the Court deems just and proper.

Dated: January 4, 2023          Respectfully submitted,

By: */s/ Joshua M. Mandel*

**GREENBERG TRAURIG, PA**
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0570
Facsimile: (305) 961-5702
THOMAS R. HEISLER
Florida Bar No. 1029852
heislert@gtlaw.com
BENJAMIN GREENBERG
Florida Bar No. 192732
greenbergb@gtlaw.com
JOSHUA M. MANDEL
Florida Bar No. 1031396
mandelj@gtlaw.com
cruzm@gtlaw.com
fernandezf@gtlaw.com
FLService@gtlaw.com

*Counsel for Plaintiff Riccardo Silva*

# EXHIBIT 2

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | | |
|---|---|---|
| **RICCARDO SILVA** | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   1:22-cv-24262-RKA |
| **MOBILE BILLBOARDS, INC., et al.,** | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:    **TWITTER, INC.**
**c/o CT CORPORATION SYSTEM, 1200 SOUTH PINE ISLAND ROAD, PLANTATION, FL 33324**

*Testimony*: YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place: **Weston Corporate Center I** <br> **2500 Weston Rd., Ste. 220** <br> **Fort Lauderdale, Florida 33331** | Date and Time: <br><br> **Friday, 02/24/2023 at 10:00 AM (EST)** |
|---|---|

The deposition will be recorded by this method: **Videotaped and transcribed by Court Reporter**

*Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

**See Exhibit "A"**

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  **February 10, 2023**

| *CLERK OF COURT* | OR | |
|---|---|---|
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing **Plaintiff, RICCARDO SILVA**, who issues or requests this subpoena, is:

**Adam Stolz | Miami Tower, 100 SE 2nd St., Suite 1200, Miami, FL 33131 | astolz@lashgoldberg.com | 305-347-4040**

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 1:22-cv-24262-RKA

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date: _____                    _____
                                                            *Server's signature*

                                                         _____
                                                            *Printed name and title*

                                                         _____
                                                            *Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## EXHIBIT A

PLEASE TAKE NOTICE that pursuant to Rule 45 of the Federal Rules of Civil Procedure, you are required to produce the following documents, electronically stored information, or objects, in accordance with the definitions and instructions listed below.  In addition, you shall testify with respect to each of the subject matters listed below.

### DEFINITIONS

1.      The terms "document" or "documents" mean the original and all drafts or copies thereof which are different in any way from the original (whether by interlineations, receipt stamps notation, indication of copies sent or received, or otherwise) and all attached or annexed materials to any written, typewritten, handwritten, printed, graphic, photographic or recorded material, correspondence, telegrams, facsimiles, telexes, emails, memoranda, records of meetings, conferences, telephone or other communications, pamphlets, books, notes, reports, studies, transcripts, indexes, records, charts, tabulations, lists, analyses, graphs, diagrams, estimates, minutes, tapes, photographs and photographic films, sound recordings, phonograph records, video tapes, data compilations from which information can be obtained or can be translated into a form reasonably usable, computer data files, tapes, electronic media, inputs or outputs, and other computer-readable records or programs, all electronically stored or created data, whether written, typed, printed, punched, filmed, marked in any way, data or information stored in any form readable or accessible by computer including, but not limited to, magnetic tape storage media, hard disks, hard drives, floppy disks, compact disks, computer tapes, memory and magnetic tapes of any kind, backup copies and "deleted" files on any computer storage devise or media, including the printed output of any such electronic data/communications processing equipment or magnetically stored information, computer memory, optical media, magneto media, and other

1

physical media on which notations or making of any kind can be affixed whether located on-site or off-site.  All drafts, copies or preliminary materials which are different in any way from the executed or final documents shall be considered to be additional documents as the terms are used herein.

2.      The terms "relating to" or "related to" mean constituting or in any way directly or indirectly, concerning, or referring or relating to, reflecting, considering, modifying, amending, confirming, endorsing, evidencing, representing, supporting, qualifying, terminating, recording, concealing, or negating.

3.      The term "communication" means any transmission, conveyance, or exchange of information, whether by written, oral, or other means.  It shall include, without limitation, any meeting, discussion, contact, conference, telephone conversation, letter, e-mail, transaction, Internet posting, memorandum, document, message (including text and chat messages), telegram, telefax, mailgram, billing statement, electronic recording, or other form of written or oral information transmission or exchange.

4.      The terms "all" and "each" shall be construed as all and each.

5.      The words "and" as well as "or" shall be construed as either disjunctive or conjunctive and references are to be construed either singular or plural, as necessary to bring within scope of this request to produce any document which might otherwise be construed to be outside its scope.

6.      The term "Complaint" refers to the Complaint filed in this Lawsuit.  A true and correct copy of the Complaint is attached hereto as Exhibit 1.

7.      The terms "You" or "Your" or "Twitter" refers to Twitter, Inc., together with all of its assignors, merged, consolidated or acquired predecessors or successors; parents, divisions,

units, subsidiaries, and affiliates, whether or not wholly-owned; including present and former officers, directors, agents, representatives or employees of any of the foregoing, and including all other persons acting or purporting to act on its behalf; experts, persons consulted concerning any factual matter or matters of opinion relating to any of the facts or issues involved in this action, and unless privileged, its attorneys.

8. The term "Handle" shall mean the Twitter handle or account, @SOSSilva7.

## INSTRUCTIONS APPLICABLE TO DOCUMENT REQUESTS

1. The following Instructions are to be considered applicable to each of the Document Requests unless made expressly inapplicable by a particular Request.

2. Twitter is to search all documents within its possession, custody, or control, wherever located, including but not limited to documents placed in storage facilities and documents in the possession of any person acting or purporting to act on Twitter's behalf.  A document is deemed to be in the possession, custody, or control of Twitter if it is in Twitter's actual possession or custody, or if it is in the custody of another person and Twitter owns the document in whole or in part, or Twitter has the right to inspect, examine, or copy such document, or Twitter has any express or implied understanding that Twitter may use, inspect, or copy such document.

3. Twitter shall produce any and all drafts and copies of each document that are responsive to any Request, and all copies of such documents that are not identical in every respect, including but not limited to copies containing handwritten notes, markings, stamps, or interlineations.

4. Production is sought regardless of whether the document purportedly was "deleted," if such document is capable of being retrieved or restored.

3

5.      If any of the documents requested was formerly in Twitter's possession, custody, or control but no longer is in Twitter's possession, custody, or control, state when and what disposition was made of the document, and what efforts, if any, Twitter made to obtain each such document in response hereto.  Further, if any such document is not in Twitter's possession, custody, or control, but Twitter knows the identity of the person currently in possession or control of such document, state the identity of the person who has the documents, including the address and telephone number of the person.

## DOCUMENT PRODUCTION DELIVERY STANDARDS

1.      Twitter shall produce electronic documents in the following format:

(i)      <u>De-Duplication</u>: All responsive materials Documents will be globally de-duplicated throughout the case based on hash values.

(ii)      <u>Image Format</u>: Group IV B&W single-page TIFF.

(iii)      <u>Extracted Text Format</u>: Document-level text files. (Extended ASCII or Unicode if foreign language characters present).

(iv)      <u>File Naming</u>: Each image and extracted text file should be named with the beginning Bates number of the document, preferably not Including prefix (see Proposed Directory Structure below).

(v)      <u>Directory Structure</u>: Images and text files to be stored in separate directories. The image files will contain up to 2000 images per folder and the text files will contain up to 50,000 files per folder. The folder structure will be as follows:

    IMAGES
    TEXT
    NATIVES
    DATA

(vi)      Additional requirements are as follows:

| Image Requirements | |
|---|---|
| Resolution | 300 dpi |
| Image Shrinkage | Bates stamp (e.g. TEST 00000001) should be applied in the bottom .5 inch of the image. Canvas should be 8.5" x 11" for all documents. |
| Requirements | For spreadsheet files, provide a one-page TIFF placeholder (see also Native File Requirements below). OCR TIFF Image and non-searchable PDF files. |

| Loadfile/xref: File Requirements | |
|---|---|
| Load File Type | LFP or OPT |
| Load File format | ASCII text file |
| Data File Format | .DAT file |
| Delimiters | Comma     ¶     ASCII character 020<br>Quote     þ     ASCII character 254<br>Newline    ®     ASCII character 174<br>Multi-value ;     ASCII character 059 |
| Field Test | See Metadata Field List below. The first line of each load file must contain the field names. |

| Native File Requirements | |
|---|---|
| File Types | The following file types should be delivered in native format unless otherwise specified: Spreadsheet files (e.g. Excel, .csv); Emails (e.g., .msg, .pst, .mbox); and Word Processing files (e.g., .doc, .docx, .wp). |
| Spreadsheet Data | A one-page (one Bates iteration) TIFF placeholder sheet should accompany the native file version of Spreadsheet files. |
| Sample Placeholder Page | <<Type of File>>- Delivered as Native File e.g. "Excel Spreadsheet-Delivered as Native File" |
| Extracted Text | Full extracted text of the native file should be provided in a separate file as if the file had been processed to TIFF. **Do not provide the Placeholder Page text in the extracted text.** |
| File Naming | Each native file is named with the beginning Bates number of the document (see Bates requirements above), preferably not including the prefix. |
| Directory Structure | Native Files should be stored in a separate directory named "Natives". The path to the native data should be iterated in the load file in the Native Path field. The subdirectory structure within this folder should follow the same structure for Images noted above. |

| Metadata Field List |
|---|
| For documents that originated as ESI, please use the following fields in the metadata load file:<br><br>• Beginning Bates Number (with prefix)<br>• Ending Bates Number (with prefix)<br>• Beginning Family Range Bates Number<br>• Ending Family Range Bates Number<br>• Doc_Type (email, attachment, loose file)<br>• Page Count<br>• File Extension<br>• File Size<br>• Sourcefolder (The full path information for email, attachments and application files beginning with the original source folder name)<br>• Application (The name of the application that generated the native file)<br>• Subject (Subject or Re line for emails)<br>• Title (Title field for application files)<br>• TO (Addressees—email only)<br>• FROM (Recipients—email only)<br>• CC (Cc field—email only)<br>• BCC (Bcc field—email only)<br>• Custodian (name of the person, department or business unit from which a collection of email or application files originate)<br>• Author (name of the author or the creator of an application file)<br>• Date Created<br>• Date Last Modified<br>• Date Sent (email only—accuracy to days)<br>• Time Sent (email only—accuracy to seconds)<br>• Date Received (email only—accuracy to days)<br>• Time Received (email only ---accuracy to seconds)<br>• System Date Created<br>• System Date Modified<br>• System Date Accessed<br>• System Previous Versions |

## **DOCUMENT REQUESTS**

1.      All documents and communications relating to and showing the identity of the owner(s) of the Handle.

## **MATTERS ON WHICH EXAMINATION IS REQUESTED**

1.      The identity of the owner(s) of the Handle.

# EXHIBIT 1 TO SUBPOENA

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

RICCARDO SILVA,

     Plaintiff,

vs.

JOHN DOE 1 (OWNER(S) OF WEBSITE
SOSSILVA.ORG);

JOHN DOE 2 (OWNER(S) OF REDDIT
USERNAME @SOSILVA7);

JOHN DOE 3 (OWNER(S) OF TWITTER
HANDLE @SOSILVA7);

JOHN DOE 4;

MOBILE BILLBOARDS, INC.,

     Defendants.

Case No.: 1:22-cv-24262-RKA

## <u>COMPLAINT</u>

Plaintiff Riccardo Silva ("Silva"), hereby sues Defendants John Doe 1, John Doe 2, John Doe 3, and John Doe 4, all of whom may be a single person or may be more than one person (the "John Doe Defendant(s)"), and Mobile Billboards, Inc. (the "Mobile Billboard Defendant," and together with the John Doe Defendant(s), the "Defendants") and alleges:

## INTRODUCTION

1.    This case involves a defamatory campaign waged by the John Doe Defendant(s), with the assistance of the Mobile Billboard Defendant, against Mr. Silva, a successful businessman, a philanthropist, and a devoted husband and father, which campaign was designed to damage Mr. Silva both personally and professionally by publishing false and outrageous accusations of criminality against him.

2.      The purpose of this defamatory campaign is unknown to Mr. Silva, as the John Doe Defendants have hidden their identity or identities, but the campaign was designed to cause—and has in fact caused—grave damage to Mr. Silva and his family.

3.      Indeed, the Defendants sent a mobile billboard around South Miami Beach during the weekend of Miami Art Basel featuring a large photo of Mr. Silva's face with text knowingly falsely accusing Mr. Silva of being a "predator." Mr. Silva was in Miami at the time with his wife and children, and his seventeen-year-old son saw the billboard. This has, not surprisingly, caused devastation to Mr. Silva and his family.

4.      The mobile billboard directed viewers' attention to Twitter and Reddit pages, created by the John Doe Defendant(s), which contain additional knowingly false and defamatory statements. The John Doe Defendant(s) have also created a website that includes still more knowingly false and defamatory statements and accusations against Mr. Silva.

5.      The Defendants have caused and are continuing to cause grave damage to Mr. Silva by publishing this knowingly false and defamatory material accusing Mr. Silva of criminal and deviant conduct.  Mr. Silva and his family are in fear of their safety and security as a result of the Defendants' harassment and defamatory campaign.

**JURISDICTION AND VENUE**

6.      The Court has subject matter jurisdiction over this case because the amount of damages sought by Mr. Silva, exclusive of any attorney's fees, costs, and expenses, exceeds $75,000.

7.      This Court has personal jurisdiction over each of the Defendants in that, at all relevant times, they (a) resided in Florida and/or (b) committed tortious acts in Florida.

8.      Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1) and/or 1391(b)(2)

2

because at least one of the Defendants reside in this District and all Defendants are residents of Florida, and/or because a substantial part of the events giving rise to the below claims occurred in this District.

## THE PARTIES

9.      Mr. Silva is an individual whose domicile is London, United Kingdom. Mr. Silva owns a condominium in South Miami Beach.

10.     Defendant John Doe 1 is the owner of the website sossilva.org.  Upon information and belief, John Doe 1 resides in the State of Florida.  John Doe 1 committed the tortious acts described herein in the State of Florida.  Notably, as the allegations *infra* show, John Doe 1 may be one or more individuals and may be the same individual as John Doe 2, 3, or 4.

11.     Defendant John Doe 2 is the owner of the Reddit username @SOSilva7.  Upon information and belief, John Doe 2 resides in the State of Florida.  John Doe 2 committed the tortious acts described herein in the State of Florida.  Notably, as the allegations *infra* show, John Doe 2 may be one or more individuals and may be the same individual as John Doe 1, 3, or 4.

12.     Defendant John Doe 3 is the owner of the Twitter handle @SOSSilva7.  Upon information and belief, John Doe 3 resides in the State of Florida.  John Doe 3 committed the tortious acts described herein in the State of Florida.  Notably, as the allegations *infra* show, John Doe 3 may be one or more individuals and may be the same individual as John Doe 1,  2 or 4.

13.     Defendant John Doe 4 is the individual who hired the billboard from the Mobile Billboard Defendant. Upon information and belief, John Doe 4 resides in the State of Florida.  John Doe 4 committed the tortious acts described herein in the State of Florida.  Notably, as the allegations *infra* show, John Doe 4 may be one or more individuals and may be the same individual as John Doe 1, 2, or 3.

14.     The Mobile Billboard Defendant is a Florida corporation with principal offices in

3

Parrish, Florida, and is duly authorized to conduct business in the State of Florida. The Mobile Billboard Defendant offers mobile billboard services—i.e., a billboard that is placed on the rear of a motor vehicle and is observable by other motorists and pedestrians. The Mobile Billboard Defendant committed the tortious acts described herein in the State of Florida.

## FACTUAL BACKGROUND

15.     Mr. Silva is a husband, a father, and a renowned businessman and investor. He owns the investment company, Silva International Investments, an investment company that manages and invests in various sectors—media, technology, sports, entertainment, the arts, and real estate, to name a few. He also owns the model and talent agency, Select Model Management. In addition, he is the president and co-owner of the American professional soccer team, Miami FC, and an investor in and co-owner of AC Milan, one of the most successful soccer teams in the world.

16.     Mr. Silva is a devoted philanthropist, as well. He donates substantial time and money to various causes. He has made significant donations across a range of projects in Europe, Africa, and the United States (particularly, Miami, Florida), including to Florida International University ("FIU"), Mount Sinai Medical Center, Gulliver Schools, St. Stephen's Episcopal Day School, the Bass Museum of Art, the New World Symphony, Play for Change, The Foundation for AIDS Research, Elton John AIDS Foundation, the Novak Djokovic Foundation, Movimiento Shalom, and the Bali Street Kids Project. In recognition of Mr. Silva's contributions to FIU and, more generally, to the city of Miami, FIU named its football and soccer stadium—Riccardo Silva Stadium—after him.

17.     Mr. Silva is an upstanding, law-abiding citizen. And yet, to his shock, the Defendants have recently set forth a damaging campaign against him, designed to damage him

4

personally and professionally by accusing him of conduct that is categorically false. Specifically, the Defendants have falsely accused Mr. Silva of serial sexual abuse and sexual harassment, bribery, and other falsely alleged conduct. Outrageously, the Defendants have falsely compared Mr. Silva to the likes of Jeffrey Epstein.

18.    Each and every one of these accusations against Mr. Silva is knowingly **false**—fabricated by the Defendants to damage and destroy Mr. Silva's personal and professional life.

19.    Mr. Silva seeks compensatory and punitive damages resulting from the harm that the Defendants' defamatory campaign has caused him and will continue to cause him.

## The Website

20.    John Doe 1 created the website sossilva.org (the "Website") on September 8, 2022.

21.    The Website contains only the following accusations:

> We, the survivors of sexual violence and exploitation at the hands of Riccardo Silva of Select Model Management, Silva International Investments, and other companies, have built this site to tell our story to the world, For years, Silva has used his business interests to further his own dark desires, As young women in the modeling industry, we knew that people like Riccardo Silva were out there, looking to prey on us through a combination of intimidation, bribery and emotional abuse. Silva was and is all that and more. He declared himself "untouchable" to almost all of us. He laughed when confronted with the toll his abuse had taken. He pursued us in every way and tried to destroy us when we resisted.
>
> Like Epstein before him, he sheltered himself from any blowback through his wealth and his connections.Today we say no more. Today, we name Riccardo Silva as a serial sexual predator. We will tell our story to the world. We will not rest until the world knows who Riccardo Silva really is. Not the patron of the arts or football enthusiast or business "mogul", but a thug. An animal. A coward. An absentee father to children he denies.Your crimes will be exposed.
>
> We demand justice. We will not rest until you acknowledge the havoc you have brought upon the lives of so many.

22.    Each and every one of these accusations made by John Doe 1 on the Website against Mr. Silva is knowingly false, defamatory, and extreme and outrageous.

## The Reddit Campaign

23.    John Doe 2 created the Reddit username u/SOSilva7 on September 8, 2022—the

same day the Website was created.

24.     Throughout October 2022, u/SOSilva7 made the following post (the "Reddit Posts") across several Reddit forums, including r/NYC, r/Miami, r/Florida, r/Chicago, r/Illinois, r/London, r/metoo, r/Modeling, r/sexualassault, r/TwoXChromosomes, r/abusesurvivors, r/emotionalabuse.  Together, there are roughly 16.1 million members in these Reddit forums:

"TW- my story of abuse and harassment.

Hello All,

I was in the industry for years and left after the incident I've described below. Currently, my goal is to make aspiring models and others interested in the industry aware that this behavior occurs and is far more commonplace than most think. Everything here happened to me and unfortunately was experienced by several people.

A few years ago, I began working with Select Model Management. They had (and objectively have) a decent reputation in a industry where we all pretty much realize it is only a matter of time until we experience something creepy, unwelcomed or downright horrible.

Over the course of my work, I interacted with Riccardo Silva. He's European (Italian I think) and married. Extremely wealthy. Multiple businesses and everything you'd expect. We were at several events together and he was always surrounding himself with my colleagues, other women from other agencies or just women in general. His vibe was . . . neutral but hostile? If that makes sense? Not a huge change from most in the industry, so I really just went about my work.

Over time, I saw him at other events more frequently, we made small talk and that was about it. One time he touched my shoulder with unusual force, but I didn't think much of it. Then he started reaching out. This was unsettling, because I certainly didn't expect it and while the agency had all of my info, you don't expect someone who is essentially your boss to reach out socially.

It went from a normal, 'hey, how are you', and got weird immediately after. Asking me what I liked sexually. Telling me his body count and who specifically in our agency that he slept with. The 'obvious benefits' of me sleeping with him. My brain just blanked. I didn't really respond initially. This had happened so often before at other places, and a quick 'fck off!' usually helped, but not with a person at this level and not there. I just didn't know what to do.

He kept it up, it became almost an everyday thing. I started to respond and tell him

6

this made me uncomfortable. He ignored it every time. When I saw him, he'd touch me and say things under his breath. If I was talking to other men, he'd interject himself into the conversation. All the while, he kept harassing me. I mentioned it to other people and they'd shrug, or nod, share their experience and tell me to stay as far away from him as possible. It made me physically sick. I lost weight, lost interest in a lot of things. One of the worst parts was seeing him present this image to the outside world that he was a good guy, pictures with his family playing soccer, art donations, etc. Meanwhile, he tormented me at the same time.

He ramped it up and got angry. If I wouldn't sleep with him on my own, I'd 'do it for money, of course' Constant propositions, across phone, text, dm, etc. Shaming me. Saying he'd destroy me. Destroy my career. Shame my family, especially a family member that was very ill at the time. All the things I feared, however irrational, he pushed on and made me feel like shit. It came to a head when I saw him for the last time and he grabbed me so hard on my arm it left bruises. Told me he 'wasn't interested in trash like me', that he just wanted to toy with me, that I wasn't pretty enough anyway.

I quit. Soon after, a flood of people reached out to me, sharing their experiences, which were identical to my own in some cases, and far, far, far worse in others. He harassed, intimidated, and violently abused several women. He abused his position of power to abuse others.

My life was pretty beautiful, and it still is, but despite therapy and wonderful family and friends, Riccardo's harassment and abuse changed who I am, and how I interact with people in every part of my life.

It made me harder, but I'm determined to use that to help others. To make people like him know that they can't treat people like that and to call that abuse out for others.

If you have experienced anything like this, I send you strength and love. Thank you all for reading."

25.    In December 2022, John Doe 2 created and assigned itself as the moderator of the

Reddit forum r/SOSSilvaSurvivors (the "Reddit Forum").

26.    In the Reddit Forum, u/SOSilva7 made the following post:

7



27.     Each and every one of these accusations made by John Doe 2 on Reddit against Mr. Silva is knowingly false, defamatory, and extreme and outrageous.

**The Twitter Campaign**

28.     In September 2022, John Doe 3 created the Twitter account @SOSSilva7, which is based out of Miami, Florida, as the account's Twitter page shows.   The biography reads: "Survivors Of Silva- The survivors of sexual violence and intimidation at the hands of Riccardo Silva of Select Model Management/Silva International Investments":



29.     On December 3, 2022, John Doe 3 posted a five-tweet thread, tagging media entities, such as the Miami Herald, Miami New Times, and Miami Beach News, along with the Twitter account for the international arts festival, Art Basel, which is located in Miami, Florida. The thread contained similar defamatory and false accusations to those made by John Doe 1 on the Website and by John Doe 2 on Reddit:

9



**SOSSilva**
@SOSSilva7

After years of gathering our courage, we are finally ready to tell our stories of abuse, harassment and degradation at the hands of Riccardo Silva, owner of @sportbusiness and @themiamifc. A thread 1 @MiamiHerald @MiamiNewTimes @MiamiBeachNews @ArtBasel

10:05 AM · Dec 3, 2022



**SOSSilva**
@SOSSilva7

Silva used the modeling industry as a vehicle to feed his desires to harass, intimidate and abuse young women. He used every method possible to make us feel insignificant and small
2
@MiamiHerald @MiamiNewTimes @MiamiBeachNews @ArtBasel

10:08 AM · Dec 3, 2022



**SOSSilva**
@SOSSilva7

After one of us told her story on Reddit, there was an outpouring of support, love, advice and grace from other victims of abuse and intimidation. The love we were shown gave us the strength to be here in this place now
3
@MiamiHerald @MiamiNewTimes @MiamiBeachNews @ArtBasel

10:10 AM · Dec 3, 2022

Greenberg Traurig, P.A. ■ 333 S.E. 2nd Avenue, Suite 4400 ■ Miami, Florida 33131 ■ Tel 305.579.0500 ■ Fax 305.579.0717 ■ www.gtlaw.com





30.     Like the false accusations against Mr. Silva on the Website and on Reddit, John

Doe 3's accusations of grotesque conduct against Mr. Silva on Twitter are knowingly false,

defamatory, and extreme and outrageous.

### The Mobile Billboard Campaign

31.     In or around December 2, 2022, Defendant John Doe 4 purchased a mobile

billboard (the "Billboard") from the Mobile Billboard Defendant.

32.     Defendant John Doe 4 hired the Mobile Billboard Defendant to drive around the

location of Mr. Silva's condominium he owns in South Miami Beach on Saturday, December 3,

2022, which was the weekend of Miami Art Basel, one of the busiest weekends of the year in

Miami Beach.

11

33.     On the Billboard, the Defendants falsely accused Mr. Silva of being a "predator on the loose in Miami." Observers of the Billboard are further directed to the above-referenced Twitter handle, @SOSSilva7, and Reddit Forum, r/SOSSilvaSurvivors:



34.     The Defendants' accusation that Mr. Silva is a "predator" is knowingly false,

Greenberg Traurig, P.A. ▪ 333 S.E. 2nd Avenue, Suite 4400 ▪ Miami, Florida 33131 ▪ Tel 305.579.0500 ▪ Fax 305.579.0717 ▪ www.gtlaw.com

defamatory, and extreme and outrageous. And, as alleged *supra*, the accusations against him on Twitter and Reddit are knowingly false, defamatory, and extreme and outrageous.

35. The Mobile Billboard Defendant knew or should have known the accusations against him were false or, at least, the Mobile Billboard Defendant recklessly disregarded the falsity of the accusations.

36. Mr. Silva's seventeen-year-old son witnessed the truck driving around the neighborhood of Mr. Silva's South Beach condo. He was devasted to see his father portrayed in this way. This has caused extreme emotional distress to Mr. Silva and his family.

37. Mr. Silva has suffered damages as a result of the Defendants' knowingly false, defamatory, extreme and outrageous, and injurious campaign against him. In particular, Mr. Silva has suffered, and will continue to suffer, monetary damages, including in connection with his reputation and business interests, and severe emotional distress. In addition, Mr. Silva fears for his and his family's safety and security, given the defamatory and harassing campaign against him.

38. All conditions precedent to the maintenance of this action have occurred, been performed, complied with, or waived.

## COUNT I: DEFAMATION (LIBEL)
### (Against All Defendants)

39. Mr. Silva incorporates as if fully set forth herein paragraphs 1 through 38 above.

40. The Defendants published to millions of third parties knowingly false, defamatory statements of and concerning Mr. Silva on the Website, Twitter, Reddit, and the Billboard, as outlined *supra*.

41. The Defendants knew that said statements of and concerning Mr. Silva were false, recklessly disregarded the falsity of said statements, and/or were negligent as to the falsity of said statements.

13

42.     As a result of the Defendants' wide publication of the above false statements, Mr. Silva has suffered damages, including without limitation, monetarily, to his reputation, and to his business interests.

WHEREFORE, Mr. Silva demands judgment against the Defendants for money damages, pre- and post-judgment interest, and such other relief as the Court deems just and proper. In addition, Mr. Silva seeks punitive damages pursuant to Fla. Stat. § 768.72.

### COUNT II: DEFAMATION (LIBEL) PER SE
**(Against All Defendants)**

43.     Mr. Silva incorporates as if fully set forth herein paragraphs 1 through 42 above.

44.     The Defendants published to millions of third parties knowingly false, defamatory statements of and concerning Mr. Silva on the Website, Twitter, Reddit, and the Billboard, as outlined *supra*.

45.     Those false, defamatory statements charged that Mr. Silva committed infamous crimes and/or felonies, including without limitation, sex crimes and bribery. In addition, the false, defamatory statements subject Mr. Silva to hatred, distrust, ridicule, contempt, and/or disgrace. Finally, the false, defamatory statements harm Mr. Silva in his many business ventures articulated *supra*.

46.     Accordingly, Mr. Silva has suffered damages, including without limitation, monetarily, to his reputation, and to his business interests.

WHEREFORE, Mr. Silva demands judgment against the Defendants for money damages, pre- and post-judgment interest, and such other relief as the Court deems just and proper. In addition, Mr. Silva seeks punitive damages pursuant to Fla. Stat. § 768.72.

Greenberg Traurig, P.A. ▪ 333 S.E. 2nd Avenue, Suite 4400 ▪ Miami, Florida 33131 ▪ Tel 305.579.0500 ▪ Fax 305.579.0717 ▪ www.gtlaw.com

## COUNT III: DEFAMATION (LIBEL) BY IMPLICATION
### (Against All Defendants)

47.     Mr. Silva incorporates as if fully set forth herein paragraphs 1 through 46 above.

48.     Mr. Silva asserts Count III in the alternative to Counts I and II.

49.     To the extent that one or more of the Defendants' statements on the Website, Twitter, Reddit, and/or the Billboard, which were published to millions of people, are determined to be true, all resulting suggestions, impressions, and/or implications that Mr. Silva engaged in any criminal or deviant misconduct are false.

50.     The false suggestions, impressions, and/or implications that Mr. Silva engaged in any criminal or deviant misconduct have caused serious harm to Mr. Silva.

51.     Accordingly, Mr. Silva has suffered damages, including without limitation, monetarily, to his reputation, and to his business interests.

WHEREFORE, Mr. Silva demands judgment against the Defendants for money damages, pre- and post-judgment interest, and such other relief as the Court deems just and proper.  In addition, Mr. Silva seeks punitive damages pursuant to Fla. Stat. § 768.72.

## COUNT IV: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against All Defendants)

52.     Mr. Silva incorporates as if fully set forth herein paragraphs 1 through 51 above.

53.     The Defendants engaged in extreme and outrageous conduct, including without limitation, by setting forth an internet and billboard campaign to falsely accuse Mr. Silva of heinous, criminal conduct—being compared to the likes of Jeffrey Epstein.  Engaging in a campaign to publish knowingly false and defamatory accusations of the most grotesque order goes beyond all possible bounds of decency and such ruthless attacks are intolerable in a civilized society.

15

54.     The Defendants engaged in such extreme and outrageous conduct with the intent to ruin Mr. Silva's personal and professional life, and thus to cause him severe emotional distress.

55.     At the very least, the Defendants' extreme and outrageous conduct was done with reckless disregard to the probability of causing Mr. Silva severe emotional distress.

56.     Mr. Silva has suffered severe emotional distress, and will continue to suffer severe emotional distress, as a result of the Defendants' extreme and outrageous conduct.  In addition, the mobile billboard was seen by Mr. Silva's seventeen-year-old son, a likely, and indeed intended, consequence of having the mobile billboard driven outside of Mr. Silva's condominium. Mr. Silva's son was extremely distraught by what he saw, which has caused Mr. Silva severe emotional distress at the damage this defamatory publication has inflicted on his entire family.

WHEREFORE, Mr. Silva demands judgment against the Defendants for money damages, pre- and post-judgment interest, and such other relief as the Court deems just and proper.  In addition, Mr. Silva seeks punitive damages pursuant to Fla. Stat. § 768.72.

## COUNT V: INJUNCTION – STALKING, § 784.0485(1), FLA. STAT.
### (Against All Defendants)

57.     Mr. Silva incorporates as if fully set forth herein paragraphs 1 through 56 above.

58.     The Defendants have willfully, maliciously, and repeatedly harassed Mr. Silva through their harassment and defamatory campaign against him, both online and in person.

59.     Mr. Silva has suffered severe emotional distress, and will continue to suffer severe emotional distress, as a result of the Defendants' campaign.  In addition, Mr. Silva and his family have suffered from grave concerns to their safety and security as a result of the Defendants' harassment and defamatory campaign.

60.     The Defendants' harassment and defamatory campaign serves no legitimate purpose, as it is based on knowing falsehoods.

16

61.     Mr. Silva has a clear legal right to not be harassed and defamed in violation of the law.

62.     There is no adequate remedy at law for the further violation of this right, necessitating this Court's intervention to enjoin the Defendants from continuing their campaign.

63.     Should the Court fail to permanently enjoin the Defendants from continuing their campaign, Mr. Silva will continue to suffer severe emotional distress and he and his family will continue to be in grave fear for their safety and security.

WHEREFORE, Mr. Silva demands an order permanently enjoining the Defendants from continuing their harassment and defamatory campaign, and such other relief as the Court deems just and proper.

Dated: January 4, 2023                    Respectfully submitted,

By: */s/ Joshua M. Mandel*

**GREENBERG TRAURIG, PA**
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0570
Facsimile: (305) 961-5702
THOMAS R. HEISLER
Florida Bar No. 1029852
heislert@gtlaw.com
BENJAMIN GREENBERG
Florida Bar No. 192732
greenbergb@gtlaw.com
JOSHUA M. MANDEL
Florida Bar No. 1031396
mandelj@gtlaw.com
cruzm@gtlaw.com
fernandezf@gtlaw.com
FLService@gtlaw.com

*Counsel for Plaintiff Riccardo Silva*

17

EXHIBIT 3

**WHITE & CASE**

February17, 2023

<u>VIA MAIL AND EMAIL</u>

Adam Stolz, Esq. (astolz@lashgoldberg.com)
Lash & Goldberg LLP
100 SE 2nd St., Suite 1200
Miami, FL 33131

White & Case LLP
555 South Flower Street
Suite 2700
Los Angeles, California 90071-2433
**T** +1 213 620 7700

**whitecase.com**

Re:   ***Ricardo Silva v. Mobile Billboards Inc., et al.,*** **Case No. 1:22-cv-24262-RKA (S.D. Fla.) – Subpoena**

Dear Counsel:

We represent Twitter, Inc. ("Twitter").  We are in receipt of the Subpoena to Testify at Deposition in a Civil Action (the "Subpoena") that you served on behalf of the Plaintiff in connection with the above-referenced action.  In accordance with applicable rules, including the Federal Rules of Civil Procedure, Twitter responds to the Subpoena, as well as the document requests and matters on which examination is requested ("Requests") in the Subpoena as follows:

<u>**General Objections**</u>

1.   The following responses are based on information currently available to Twitter.  These responses are given without prejudice to Twitter's right to produce or rely on subsequently discovered information.

2.   Twitter reserves the right to amend, supplement, or otherwise modify its responses and interpose objections not asserted herein.  Twitter's failure to include any objection to the Requests or any particular definition is neither intended as, nor shall in any way be deemed, a waiver of Twitter's right to assert that or any other objection.

3.   Twitter objects to the Subpoena to the extent you are seeking Twitter's deposition testimony. Twitter is unable to produce trial or deposition witnesses.  Record interpretation, opinion on what the records may mean to your case, or testimony about how to use Twitter must be provided by the parties' technical experts and/or the correct party witness(es).  It is improper and unduly burdensome to attempt to force a non-party like Twitter to provide expert testimony against their will.  *See Intermarine, LLC v. Spliethoff Bevrachtingskantoor, B.V.,* 123 F. Supp. 3d 1215 (N.D. Cal. 2015) (quashing deposition subpoena because a litigant "is not entitled to elicit expert testimony from [a service provider], particularly where it can retain its own expert witness to explain these issues[,]"and service providers "should not bear the burden of providing testimony in all cases in which [a user's documents] are at

February 17, 2023

issue"); *Young v. United States*, 181 F.R.D. 344, 346 (W.D. Tex. 1997) ("just because a party wants to make a person work as an expert does not mean that, absent the consent of the person in question, the party generally can do so."). To the extent Twitter's appearance is being requested merely to prove up records, Twitter is willing to provide a standard custodian declaration if it later produces data in connection with this Subpoena.

4.   Twitter also objects to the Subpoena to the extent demands deposition testimony and documents to be produced more than 100 miles from San Francisco, California, where its knowledgeable witnesses may work and reside. Fed. R. Civ. P. 45(c)(1)(A); Fed. R. Civ. P. 45(c)(2)(A); *M'Baye v. New Jersey Sports Prod., Inc*., 246 F.R.D. 205, 207 (S.D.N.Y. 2007) (Rule 45 "protects . . . a non-party, from a subpoena requiring travel of more than 100 miles from where he resides, is employed, or regularly transacts business in person."). The Subpoena requests deposition testimony and the production of documents at 2500 Weston Rd., Ste. 220, Fort Lauderdale, FL 33331, which is over 3,000 miles from where Twitter resides.

5.   Twitter objects to each Request to the extent they seek documents not in Twitter's possession, custody, or control.

6.   Twitter objects to all definitions, instructions, and Requests that purport to impose obligations on Twitter that are different from, in addition to, or greater than those set forth in the Federal Rules of Civil Procedure.

7.   Twitter further objects to the terms "document or documents," "relating to or related to," "communication," "handle," "showing the identity of," and "owner(s)," on the basis that these terms are vague and ambiguous, overbroad, and unduly burdensome, as the scope of materials sought in the Request is unclear.

8.   Twitter objects to the Requests to the extent they exceed the scope of basic subscriber information that Twitter may permissibly produce under the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 *et seq*., including the Stored Communications Act, 18 U.S.C. §§ 2701 *et seq*. ("SCA"), and to the extent they seek the content of a user's electronic communications, such as messages, posts, comments, photos, or videos, because such a request is barred by the SCA. The SCA does not permit private parties to compel production of the content of a user's electronic communications from service providers such as Twitter by service of a subpoena or court order, and there is no exception for civil discovery demands. 18 U.S.C. §§ 2702(a)(1), (2); 2702(b)(1)-(8); *see also Suzlon Energy Ltd. v. Microsoft Corp*., 671 F.3d 726, 730 (9th Cir. 2011) (holding that non-governmental entities may not obtain communications content with a civil discovery demand because it would "invade[] the specific interests that the [SCA] seeks to protect."); *O'Grady v. Superior Court*, 139 Cal. App. 4th 1423, 1441-47 (2006) (holding that the SCA bars civil litigants from obtaining communications content from a service provider). Such requests must be directed to the user or other non-provider entities. Active users can log into their accounts at any time to preserve, collect, produce, and authenticate their account contents. Various tools are available to help users access and download their information. Descriptions of

2

February 17, 2023

WHITE & CASE

these tools are available in Twitter's Help Center (https://help.twitter.com/en/managing-your-account/accessing-your-twitter-data).

9.  Twitter further objects to the Subpoena because you have provided no documentation demonstrating that the Court considered and imposed the First Amendment safeguards required before a litigant may be permitted to unmask the identity of an anonymous speaker. *See Smythe v. Does 1-10*, No. 15-mc-80292-LB, 2016 WL 54125 (N.D. Cal. Jan. 5, 2016) (denying the motion to enforce a subpoena against Twitter where movant failed to overcome user's First Amendment right to anonymous speech).  Before a subpoena can issue to a service provider like Twitter for information regarding the identity of an anonymous internet user, the party seeking the information must first "persuade[] the court that there is a real evidentiary basis for believing that the defendant has engaged in wrongful conduct that has caused real harm to the interests of the plaintiff."  *Music Grp. Macao Com. Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 983 (N.D. Cal. 2015) (citing *Highfields Cap. Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 975-76 (N.D. Cal. 2005)); *see also Krinsky v. Doe 6*, 159 Cal. App. 4th 1154 (2008) (explaining that a plaintiff seeking to unmask an anonymous speaker must (1) make a reasonable effort to notify the defendant that they are the subject of a subpoena; (2) make a prima facie showing of the elements of defamation; and (3) make clear to the court that the discovery of defendants' identity is necessary to pursue plaintiff's claim).  It is unclear here whether the Court has issued an order with the requisite First Amendment findings.

10.  Twitter further objects to the Requests to the extent they seek information that is more properly obtained by issuing discovery requests directly to a party in this action.  Litigants have an obligation to avoid imposing an undue burden on non-parties, and non-party discovery should therefore occur only if the information is not available through discovery from the parties to the litigation themselves.  *See* Fed. R. Civ. P. 45(d)(1), (d)(3)(A)(iv).  Indeed, a party "must first establish that it cannot obtain the discoverable information from its party-opponent before subpoenaing those documents from a non-party."  *In re CareSource Mgmt. Grp. Co*., 289 F.R.D. 251, 254 (S.D. Ohio 2013); *see also Great Am. Ins. Co. v. Veteran's Support Org*., 166 F. Supp. 3d 1303, 1310 (S.D. Fla. 2015) ("With regard to the burden imposed on non-parties in responding to discovery requests, courts consider the following factors: relevance, the requesting party's need for the documents, the breadth of the document request, and the time period covered by the request….[i]n balancing the need for discovery against the burden imposed on the person from whom documents are sought the status of a person as a non-party is a factor that weights against disclosure.") ("internal citations omitted).  Twitter does not have an "obligation to determine which documents have, or have not, been produced to" parties to the litigation.  *In re CareSource Mgmt. Grp. Co*., 289 F.R.D at 254.

11.  Because it appears that you purport to know or suspect who controls a targeted account, you may obtain the information you seek by issuing a discovery request directly to that person, who is not subject to the SCA's provisions.  Courts have recognized that a request for production directly to the user is the appropriate way to obtain the content of a litigant's electronic communications.  *See, e.g.*, *Suzlon*, 671 F.3d at 731 (noting that the inability to

3

February 17, 2023

obtain documents from a provider does not affect the ability to obtain the documents directly from the user); *O'Grady*, 139 Cal. App. 4th at 1446 (holding that a discovery request for content must be directed to the user).  This is consistent with your duty to avoid imposing an undue burden on nonparties such as Twitter, and nonparty discovery can occur only if the information sought is not available through discovery from the parties to the litigation themselves.  *See, e.g.*, Fed. R. Civ. P. 45(d)(1); *Suzlon*, 671 F.3d at 731 (noting that the inability to obtain documents from a provider does not affect the ability to obtain the documents directly from the user); *Calcor Space Facility, Inc. v. Superior Court*, 53 Cal. App. 4th 216, 225 (1997) (holding that "[a]s between parties to litigation and nonparties, the burden of discovery should be placed on the latter only if the former do not possess the material sought to be discovered.").

12. Twitter objects to the Requests to the extent they seek protected or privileged information, including information protected by the attorney-client privilege, work product doctrine, or other applicable privilege, or confidential, proprietary, or trade secret information.  Twitter does not intend to disclose any protected material.  Any disclosure of protected materials is inadvertent and should not be construed as a waiver of any applicable privilege or protection.

13. Twitter objects to the Subpoena, including the "Document Production Delivery Standards" detailed therein, to the extent it calls for information to be produced in a form or manner other than that kept by Twitter in the usual course of its business.

14. Twitter notes that according to its policies it will give notice to an impacted user before producing basic subscriber information.

15. These general objections shall apply to each response, and the general objections shall be deemed as continuing as to each Request and are not waived, or limited, by Twitter's specific objections and responses.

## Specific Responses and Objections

**Document Request No. 1:**

All documents and communications relating to and showing the identity of the owner(s) of the Handle.

**Response to Document Request No. 1:**

In addition to the foregoing objections, Twitter objects to the terms "documents," "relating to," "showing," "identity," and "owner," on the basis that these terms are vague and ambiguous, overbroad, and unduly burdensome, as the scope of materials sought in the Request is unclear.

Twitter further objects to this Request to the extent it seeks information that should be directed to the user or other non-provider entities.  Active users can log into their accounts at any time to preserve, collect, produce, and authenticate their account contents.  Various tools are available to help users access and download their information.  Descriptions of these tools are available in

4

WHITE & CASE

February 17, 2023

Twitter's Help Center (https://help.twitter.com/en/managing-your-account/accessing-your-twitter-data).

Twitter further objects to this Request to the extent that it seeks information that is more properly obtained by issuing discovery requests directly to a party in this action.

Twitter further objects to the Request to the extent it exceeds the scope of basic subscriber information that Twitter may permissibly produce under the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 *et seq*., including the SCA, 18 U.S.C. §§ 2701 *et seq*., and to the extent it seeks information that is prohibited from disclosure and/or is not subject to production under the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 *et seq*., including the SCA, 18 U.S.C. §§ 2701 *et seq*.

Twitter further objects to the Request to the extent it seeks to unmask the identity of an anonymous speaker.  You have provided no documentation demonstrating that the Court considered and imposed the First Amendment safeguards required before a litigant may be permitted to unmask the identity of an anonymous speaker.

Twitter further objects on the basis that all legal process must properly identify the Twitter account at-issue by providing the @username and/or URL of the subject Twitter account in question (e.g., @safety and https://twitter.com/safety).  Twitter has more than 300 million users, making it impossible to ensure that searches based on name, date of birth, address, or like information accurately identify the correct records.  The Request purports to use such information in seeking to ask Twitter regarding the Handle any alleged "documents or communications relating to and showing the identity of the Handle" and moreover, seemingly asks for information regarding the alleged "documents or communications relating to and showing the identity of the Handle" without providing a username or URL.

Subject to and without waiving these objections, Twitter responds as follows: Twitter will not produce documents in response to this Request.

**Matters on Which Examination Is Requested No. 1:**

The identity of the owner(s) of the Handle.

**Response to Matters on Which Examination Is Requested No. 1:**

In addition to the foregoing objections, Twitter objects to the terms "identity," and "owner," on the basis that these terms are vague and ambiguous, overbroad, and unduly burdensome, as the scope of materials sought in the Request is unclear.

Twitter further objects to this Request to the extent it seeks information that should be directed to the user or other non-provider entities.  Active users can log into their accounts at any time to preserve, collect, produce, and authenticate their account contents.  Various tools are available to help users access and download their information.  Descriptions of these tools are available in Twitter's Help Center.

5

February 17, 2023

WHITE & CASE

Twitter further objects to this Request to the extent that it seeks information that is more properly obtained by issuing discovery requests directly to a party in this action.

Twitter further objects to the Request to the extent it exceeds the scope of basic subscriber information that Twitter may permissibly produce under the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 *et seq*., including the SCA, 18 U.S.C. §§ 2701 *et seq*., and to the extent it seeks information that is prohibited from disclosure and/or is not subject to production under the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 *et seq*., including the SCA, 18 U.S.C. §§ 2701 *et seq*.

Twitter further objects to the Request to the extent it seeks to unmask the identity of an anonymous speaker. You have provided no documentation demonstrating that the Court considered and imposed the First Amendment safeguards required before a litigant may be permitted to unmask the identity of an anonymous speaker.

Twitter further objects to the Subpoena to the extent you are seeking Twitter's deposition testimony. Twitter is unable to produce trial or deposition witnesses. Record interpretation, opinion on what the records may mean to your case, or testimony about how to use Twitter must be provided by the parties' technical experts and/or the correct party witness(es). It is improper and unduly burdensome to attempt to force a non-party like Twitter to provide expert testimony against their will. Twitter also objects to the Subpoena to the extent demands deposition testimony and documents to be produced more than 100 miles from San Francisco, California, where its knowledgeable witnesses may work and reside.

Twitter further objects on the basis that all legal process must properly identify the Twitter account at-issue by providing the @username and/or URL of the subject Twitter account in question (e.g., @safety and https://twitter.com/safety). Twitter has more than 300 million users, making it impossible to ensure that searches based on name, date of birth, address, or like information accurately identify the correct records. The Request purports to use such information in seeking to ask Twitter regarding the Handle any alleged "documents or communications relating to and showing the identity of the Handle" and moreover, seemingly asks for information regarding the alleged "documents or communications relating to and showing the identity of the Handle" without providing a username or URL.

Subject to and without waiving these objections, Twitter responds as follows: Twitter will not produce a witness to testify in response to this Request.

***

6

February 17, 2023

**WHITE & CASE**

Based on at least the foregoing objections, Twitter will not be producing any data in response to your Subpoena.  Please do not hesitate to contact me if you have any questions.  Twitter otherwise preserves and does not waive any other available objections or rights.

Sincerely,

**Jon Hawk**
**T** +(213) 620-7741
**E** jhawk@whitecase.com

7

EXHIBIT 4

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

RICCARDO SILVA,

      Plaintiff,

vs.

MOBILE BILLBOARDS, INC., et al.

      Defendants.

Case No.: 22-cv-24262-Altman/Reid

---

## PLAINTIFF RICCARDO SILVA'S UNOPPOSED MOTION TO RE-OPEN CASE

Plaintiff Riccardo Silva ("Plaintiff") hereby respectfully moves the Court for an Order re-opening the case, and in support thereof, states as follows:

1.     Plaintiff filed this lawsuit on December 30, 2022. [ECF No. 1].

2.     In the Complaint, [ECF No. 7-1], Plaintiff names five defendants: Mobile Billboards, Inc. ("Mobile Billboards") and four John Doe Defendants (the "John Does").

3.     In particular, Plaintiff alleges in his Complaint that the four John Does have anonymously defamed him, through forums such as Twitter, Reddit, a website (the "Website"), and a mobile billboard.

4.     Since filing his lawsuit, Plaintiff has been working diligently to identify the anonymous John Does, including for purposes of service of process. *See* Joint Sched. Rpt. [ECF No. 18] (Plaintiff informing the Court that his efforts to identify the John Does are underway). As part of those efforts, Plaintiff has done the following to date:

        A.     Subpoenaed Reddit for the identities of the owner(s) of the Reddit username, the publisher(s) of the Reddit posts, and the moderator(s) of the Reddit forum at issue in the Complaint;

        B.     Subpoenaed Twitter for the identity of the owner(s) of the Twitter account at issue in the Complaint;

      C.      Subpoenaed Wix for the identity of the purchaser of the Wix-domain associated with the Website at issue in the Complaint;

      D.      Subpoenaed Verizon, which is the cell-phone service provider for at least one individual believed to be at the helm of the defamation campaign against Plaintiff and the network provider for the IP address associated with the Website;

      E.      Subpoenaed several individuals believed to be involved in the defamation campaign against Plaintiff based on records produced by Verizon and Wix;

      F.      Subpoenaed a restaurant in New York City to identify the owner(s) of a phone number used by the individual(s) who Plaintiff believes is involved in the defamation campaign against him; and

      G.      Subpoenaed Chase Bank, N.A. to identify the owner(s) of a certain debit or credit card used to purchase the Wix domain name for the Website at issue in the Complaint.

      H.      Engaged a private investigator to assist in identifying the John Does.

5.      In addition, Plaintiff is in the process of preparing and issuing subpoenas to several other individuals and companies he has learned have been in contact with the anonymous individuals believed to be involved in the defamation campaign against him. Those individuals and companies include the following:

      A.      Several aerial banner companies, which provide aerial billboard services, akin to the mobile billboard services offered by Defendant Mobile Billboards;

      B.      Another mobile-billboard company, which offers mobile-billboard services akin to those offered by Defendant Mobile Billboards; and

      C.      At least three other cell-phone service providers, who Plaintiff has learned are the providers for cell-phone numbers believed to be involved in the defamation campaign against him.

6.      In short, Plaintiff is working diligently on unraveling the anonymous network out to falsely attack him.

7.      Indeed, Plaintiff's efforts have thus far revealed the identities of at least two individuals known to be involved in—and believed to be spearheading—the defamation campaign against Plaintiff.

8.      Plaintiff intends to name those two individuals (and possibly other individuals, depending on the results of his efforts described *supra*), and at least one company, in an amended complaint, which is due to the Court on or before March 29, 2023, per the Court's Scheduling Order.  *See* [ECF No. 19].

9.      However, upon Defendant Mobile Billboards' unopposed motion for extension of time to respond to the Complaint, the Court entered an Order administratively closing this case. *See* Paperless Order [ECF No. 22].

10.     In the Order, the Court stated the basis for its administrative closure: "In their Motion, the Defendants told us they have 'been in communication with counsel for [Plaintiff] in an attempt to reach an agreement which would resolve the dispute without exhausting the Court's valuable time and without the need for costly litigation.'"

11.     To be clear, only one Defendant—Mobile Billboards—moved for an extension of time to respond to the Complaint.  Mobile Billboards is just one piece to what appears to be a much-larger puzzle in the defamation campaign waged against Plaintiff.  Even if Plaintiff and Defendant Mobile Billboards were to resolve the claims against Defendant Mobile Billboards, "the dispute" continues as to the four John Doe Defendants.

12.     Given the extraordinary lengths at which the John Does have attempted to anonymously and falsely accuse Plaintiff of criminal conduct, Plaintiff has yet been unable to serve the John Does with process, as explained *supra*, despite his diligent efforts to date.

13.     And, thus, the Court's administrative closure of this case is prejudicial to Plaintiff's efforts to identify the John Does. Indeed, on February 27, 2023, in-house counsel for Reddit wrote to Attorney Adam Stolz, co-counsel for Plaintiff, that it would not comply with Plaintiff's subpoena, in part, because of the Court's administrative closure. In particular, Reddit's counsel stated that Reddit would not comply with the subpoena "particularly now that the case is stayed," and that before it were to comply with the subpoena, "Plaintiff will need to get the S.D. Fla. Court to lift the stay."

14.     Accordingly, Plaintiff respectfully requests that the Court re-open the case so that Plaintiff can proceed with his case against the Defendants, including the John Doe Defendants, pursuant to the Court's Scheduling Order.

15.     Plaintiff has conferred with Defendant Mobile Billboards, which does not oppose the relief sought through this Motion and asks that it have, as it requested, until April 14, 2023 to file its answer to Plaintiff's complaint.

WHEREFORE, Plaintiff Riccardo Silva respectfully requests that this Court enter an Order re-opening the case, setting the April 14, 2023 deadline for Defendant Mobile Billboards to answer Plaintiff's Complaint, and for such further relief as this Court deems equitable, just, and proper.

Dated: February 28, 2023

Respectfully submitted,

By: */s/ Joshua M. Mandel*

**GREENBERG TRAURIG, P.A.**
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0570
Facsimile: (305) 961-5702

**THOMAS R. HEISLER**
Florida Bar No. 1029852
heislert@gtlaw.com
**BENJAMIN GREENBERG**
Florida Bar No. 192732
greenbergb@gtlaw.com
**JOSHUA M. MANDEL**
Florida Bar No. 1031396
mandelj@gtlaw.com
cruzm@gtlaw.com
fernandezf@gtlaw.com
FLService@gtlaw.com

*Counsel for Plaintiff Riccardo Silva*

**LASH GOLDBERG LLP**
100 SE 2nd Street, Ste. 1200
Miami, Florida 33131
Telephone: (305) 347-4040
Facsimile: (305) 347-4050

**ADAM J. STOLZ**
Florida Bar No. 1011946
astolz@lashgoldberg.com

*Co-Counsel for Plaintiff Riccardo Silva*

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of February, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Joshua M. Mandel<br>JOSHUA M. MANDEL

# EXHIBIT 5

| | |
|---|---|
| **From:** | Paul Thanasides <paul@mcintyrefirm.com> |
| **Sent:** | Friday, March 31, 2023 4:25 PM |
| **To:** | Adam Stolz |
| **Cc:** | ComplexLit E-Service; CL Service; Christen Hernandez; Mouhannad Atfeh |
| **Subject:** | Re: R. 45 Notice of Subpoenas___Silva v. Mobile Billboards Inc., et al., Case No. 1:22-cv-24262-RKA (S.D. Fla) |
| **Attachments:** | image001.png |

**EXTERNAL:**
No objection.

**Paul Thanasides**
McIntyre Thanasides
paul@mcintyrefirm.com
813.412.0393 (c) | 813.223.0000 (o)

On Mar 31, 2023, at 6:05 PM, Adam Stolz <astolz@lashgoldberg.com> wrote:

*[\*This email originated from outside of McIntyre\*]*

Some people who received this message don't often get email from astolz@lashgoldberg.com. Learn why this is important

Paul,

I am co-counsel for Riccardo Silva in connection with the above-referenced matter. Please find attached a Notice of Service of Subpoenas on Various Entities pursuant to Fed. R. Civ. P. 45.  Please promptly advise whether your client, Mobile Billboards, Inc., has any objections or questions regarding the attached.

Thank you and have a nice weekend.

Sincerely,

**Adam Stolz**
Attorney
T (305) 347-4040
E astolz@lashgoldberg.com

<image001.png>

Miami Tower
100 SE 2nd St., Ste. 1200
Miami, Florida 33131
www.lashgoldberg.com

<R. Silva Notice of Service of Subpoenas on Various Entities__03.31.2023.pdf>

1

EXHIBIT 6

# UNITED STATES DISTRICT COURT

for the
Southern District of Florida

| | |
|---|---|
| **RICCARDO SILVA** | ) |
| _Plaintiff_ | ) |
| v. | )     Civil Action No.    1:22-cv-24262-RKA |
| | ) |
| **JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, JOHN DOE 4, and MOBILE BILLBOARDS, INC.** | ) ) ) |
| _Defendants_ | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS IN A CIVIL ACTION

To:     **Twitter, Inc. c/o CT Corporation System (registered agent)**
        **330 N. Brand Blvd, Glendale, CA 91203**

---

_Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

        **See Attached Exhibit "A"**

| Place:<br>Bartko Zankel Bunzel & Miller<br>**One Embarcadero Center, Ste. 800, San Francisco, CA 94111**<br>**Attn: Kerry L. Duffy; Adam J. Stolz** | Date and Time:<br><br>**Thursday, 04/13/2023 at 5:00 PM** |
|---|---|

---

       The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   **April 3, 2023**

              _CLERK OF COURT_

                               OR

        _____         _____
          _Signature of Clerk or Deputy Clerk_               _Attorney's signature_

The name, address, e-mail address, and telephone number of the attorney representing **Plaintiff, RICCARDO SILVA**, who issues or requests this subpoena, is: _____

**Adam Stolz | Miami Tower, 100 SE 2nd St., Suite 1200, Miami, FL 33131 | astolz@lashgoldberg.com | 305-347-4040**

#### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 1:22-cv-24262-RKA

**PROOF OF SERVICE**
***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2) *Command to Produce Materials or Permit Inspection.***
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3) *Quashing or Modifying a Subpoena.***

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT A

**EXHIBIT A**

PLEASE TAKE NOTICE that pursuant to Rule 45 of the Federal Rules of Civil Procedure, you are required to produce the following documents, electronically stored information, or objects, in accordance with the definitions and instructions listed below.  In addition, you shall testify with respect to each of the subject matters listed below.

**DEFINITIONS**

1.      The terms "document" or "documents" mean the original and all drafts or copies thereof which are different in any way from the original (whether by interlineations, receipt stamps notation, indication of copies sent or received, or otherwise) and all attached or annexed materials to any written, typewritten, handwritten, printed, graphic, photographic or recorded material, correspondence, telegrams, facsimiles, telexes, emails, memoranda, records of meetings, conferences, telephone or other communications, pamphlets, books, notes, reports, studies, transcripts, indexes, records, charts, tabulations, lists, analyses, graphs, diagrams, estimates, minutes, tapes, photographs and photographic films, sound recordings, phonograph records, video tapes, data compilations from which information can be obtained or can be translated into a form reasonably usable, computer data files, tapes, electronic media, inputs or outputs, and other computer-readable records or programs, all electronically stored or created data, whether written, typed, printed, punched, filmed, marked in any way, data or information stored in any form readable or accessible by computer including, but not limited to, magnetic tape storage media, hard disks, hard drives, floppy disks, compact disks, computer tapes, memory and magnetic tapes of any kind, backup copies and "deleted" files on any computer storage devise or media, including the printed output of any such electronic data/communications processing equipment or magnetically stored information, computer memory, optical media, magneto media, and other

1

physical media on which notations or making of any kind can be affixed whether located on-site or off-site.  All drafts, copies or preliminary materials which are different in any way from the executed or final documents shall be considered to be additional documents as the terms are used herein.

2.      The terms "relating to" or "related to" mean constituting or in any way directly or indirectly, concerning, or referring or relating to, reflecting, considering, modifying, amending, confirming, endorsing, evidencing, representing, supporting, qualifying, terminating, recording, concealing, or negating.

3.      The term "communication" means any transmission, conveyance, or exchange of information, whether by written, oral, or other means.  It shall include, without limitation, any meeting, discussion, contact, conference, telephone conversation, letter, e-mail, transaction, Internet posting, memorandum, document, message (including text and chat messages), telegram, telefax, mailgram, billing statement, electronic recording, or other form of written or oral information transmission or exchange.

4.      The terms "all" and "each" shall be construed as all and each.

5.      The words "and" as well as "or" shall be construed as either disjunctive or conjunctive and references are to be construed either singular or plural, as necessary to bring within scope of this request to produce any document which might otherwise be construed to be outside its scope.

6.      The term "Complaint" refers to the Complaint filed in this Lawsuit.  A true and correct copy of the Complaint is attached hereto as Exhibit 1.

7.      The terms "You" or "Your" or "Twitter" refers to Twitter, Inc., together with all of its assignors, merged, consolidated or acquired predecessors or successors; parents, divisions,

units, subsidiaries, and affiliates, whether or not wholly-owned; including present and former officers, directors, agents, representatives or employees of any of the foregoing, and including all other persons acting or purporting to act on its behalf; experts, persons consulted concerning any factual matter or matters of opinion relating to any of the facts or issues involved in this action, and unless privileged, its attorneys.

8.      The term "Handle" shall mean the Twitter handle or account, @SOSSilva7.

**INSTRUCTIONS APPLICABLE TO DOCUMENT REQUESTS**

1.      The following Instructions are to be considered applicable to each of the Document Requests unless made expressly inapplicable by a particular Request.

2.      Twitter is to search all documents within its possession, custody, or control, wherever located, including but not limited to documents placed in storage facilities and documents in the possession of any person acting or purporting to act on Twitter's behalf.  A document is deemed to be in the possession, custody, or control of Twitter if it is in Twitter's actual possession or custody, or if it is in the custody of another person and Twitter owns the document in whole or in part, or Twitter has the right to inspect, examine, or copy such document, or Twitter has any express or implied understanding that Twitter may use, inspect, or copy such document.

3.      Twitter shall produce any and all drafts and copies of each document that are responsive to any Request, and all copies of such documents that are not identical in every respect, including but not limited to copies containing handwritten notes, markings, stamps, or interlineations.

4.      Production is sought regardless of whether the document purportedly was "deleted," if such document is capable of being retrieved or restored.

5.      If any of the documents requested was formerly in Twitter's possession, custody, or control but no longer is in Twitter's possession, custody, or control, state when and what disposition was made of the document, and what efforts, if any, Twitter made to obtain each such document in response hereto.  Further, if any such document is not in Twitter's possession, custody, or control, but Twitter knows the identity of the person currently in possession or control of such document, state the identity of the person who has the documents, including the address and telephone number of the person.

## DOCUMENT PRODUCTION DELIVERY STANDARDS

1.      Twitter shall produce electronic documents in the following format:

(i)      <u>De-Duplication</u>: All responsive materials Documents will be globally de-duplicated throughout the case based on hash values.

(ii)      <u>Image Format</u>: Group IV B&W single-page TIFF.

(iii)      <u>Extracted Text Format</u>: Document-level text files. (Extended ASCII or Unicode if foreign language characters present).

(iv)      <u>File Naming</u>: Each image and extracted text file should be named with the beginning Bates number of the document, preferably not Including prefix (see Proposed Directory Structure below).

(v)      <u>Directory Structure</u>: Images and text files to be stored in separate directories. The image files will contain up to 2000 images per folder and the text files will contain up to 50,000 files per folder. The folder structure will be as follows:

IMAGES
TEXT
NATIVES
DATA

(vi)      Additional requirements are as follows:

| Image Requirements | |
|---|---|
| Resolution | 300 dpi |
| Image Shrinkage | Bates stamp (e.g. TEST 00000001) should be applied in the bottom .5 inch of the image. Canvas should be 8.5" x 11" for all documents. |
| Requirements | For spreadsheet files, provide a one-page TIFF placeholder (see also Native File Requirements below). OCR TIFF Image and non-searchable PDF files. |

| Loadfile/xref: File Requirements | |
|---|---|
| Load File Type | LFP or OPT |
| Load File format | ASCII text file |
| Data File Format | .DAT file |
| Delimiters | Comma         ¶      ASCII character 020<br>Quote          þ      ASCII character 254<br>Newline       ®      ASCII character 174<br>Multi-value  ;      ASCII character 059 |
| Field Test | See Metadata Field List below. The first line of each load file must contain the field names. |

| Native File Requirements | |
|---|---|
| File Types | The following file types should be delivered in native format unless otherwise specified: Spreadsheet files (e.g. Excel, .csv); Emails (e.g., .msg, .pst, .mbox); and Word Processing files (e.g., .doc, .docx, .wp). |
| Spreadsheet Data | A one-page (one Bates iteration) TIFF placeholder sheet should accompany the native file version of Spreadsheet files. |
| Sample Placeholder Page | <<Type of File>>- Delivered as Native File e.g. "Excel Spreadsheet-Delivered as Native File" |
| Extracted Text | Full extracted text of the native file should be provided in a separate file as if the file had been processed to TIFF. **Do not provide the Placeholder Page text in the extracted text.** |
| File Naming | Each native file is named with the beginning Bates number of the document (see Bates requirements above), preferably not including the prefix. |
| Directory Structure | Native Files should be stored in a separate directory named "Natives". The path to the native data should be iterated in the load file in the Native Path field. The subdirectory structure within this folder should follow the same structure for Images noted above. |

5

| Metadata Field List |
|---|
| For documents that originated as ESI, please use the following fields in the metadata load file:<br><br>• Beginning Bates Number (with prefix)<br>• Ending Bates Number (with prefix)<br>• Beginning Family Range Bates Number<br>• Ending Family Range Bates Number<br>• Doc_Type (email, attachment, loose file)<br>• Page Count<br>• File Extension<br>• File Size<br>• Sourcefolder (The full path information for email, attachments and application files beginning with the original source folder name)<br>• Application (The name of the application that generated the native file)<br>• Subject (Subject or Re line for emails)<br>• Title (Title field for application files)<br>• TO (Addressees—email only)<br>• FROM (Recipients—email only)<br>• CC (Cc field—email only)<br>• BCC (Bcc field—email only)<br>• Custodian (name of the person, department or business unit from which a collection of email or application files originate)<br>• Author (name of the author or the creator of an application file)<br>• Date Created<br>• Date Last Modified<br>• Date Sent (email only—accuracy to days)<br>• Time Sent (email only—accuracy to seconds)<br>• Date Received (email only—accuracy to days)<br>• Time Received (email only ---accuracy to seconds)<br>• System Date Created<br>• System Date Modified<br>• System Date Accessed<br>• System Previous Versions |

## DOCUMENT REQUESTS

1.      All non-content documents, communications, and information that constitute basic subscriber information for the owner(s) of the Twitter Handle/account, @SOSSilva7, including, but not limited to, name(s), street/mailing address(s), email address(es), IP logs, username(s) or other subscriber identity, payment information, billing information, or any other information that is related or could be use to identify the owner(s) of the Handle.

# EXHIBIT 1 TO SUBPOENA

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

RICCARDO SILVA,

      Plaintiff,

vs.

JOHN DOE 1 (OWNER(S) OF WEBSITE
SOSSILVA.ORG);

JOHN DOE 2 (OWNER(S) OF REDDIT
USERNAME @SOSILVA7);

JOHN DOE 3 (OWNER(S) OF TWITTER
HANDLE @SOSSILVA7);

JOHN DOE 4;

MOBILE BILLBOARDS, INC.,

      Defendants.

Case No.: 1:22-cv-24262-RKA

## **COMPLAINT**

      Plaintiff Riccardo Silva ("Silva"), hereby sues Defendants John Doe 1, John Doe 2, John Doe 3, and John Doe 4, all of whom may be a single person or may be more than one person (the "John Doe Defendant(s)"), and Mobile Billboards, Inc. (the "Mobile Billboard Defendant," and together with the John Doe Defendant(s), the "Defendants") and alleges:

## **INTRODUCTION**

      1.    This case involves a defamatory campaign waged by the John Doe Defendant(s), with the assistance of the Mobile Billboard Defendant, against Mr. Silva, a successful businessman, a philanthropist, and a devoted husband and father, which campaign was designed to damage Mr. Silva both personally and professionally by publishing false and outrageous accusations of criminality against him.

2.      The purpose of this defamatory campaign is unknown to Mr. Silva, as the John Doe Defendants have hidden their identity or identities, but the campaign was designed to cause—and has in fact caused—grave damage to Mr. Silva and his family.

3.      Indeed, the Defendants sent a mobile billboard around South Miami Beach during the weekend of Miami Art Basel featuring a large photo of Mr. Silva's face with text knowingly falsely accusing Mr. Silva of being a "predator." Mr. Silva was in Miami at the time with his wife and children, and his seventeen-year-old son saw the billboard. This has, not surprisingly, caused devastation to Mr. Silva and his family.

4.      The mobile billboard directed viewers' attention to Twitter and Reddit pages, created by the John Doe Defendant(s), which contain additional knowingly false and defamatory statements. The John Doe Defendant(s) have also created a website that includes still more knowingly false and defamatory statements and accusations against Mr. Silva.

5.      The Defendants have caused and are continuing to cause grave damage to Mr. Silva by publishing this knowingly false and defamatory material accusing Mr. Silva of criminal and deviant conduct.  Mr. Silva and his family are in fear of their safety and security as a result of the Defendants' harassment and defamatory campaign.

## JURISDICTION AND VENUE

6.      The Court has subject matter jurisdiction over this case because the amount of damages sought by Mr. Silva, exclusive of any attorney's fees, costs, and expenses, exceeds $75,000.

7.      This Court has personal jurisdiction over each of the Defendants in that, at all relevant times, they (a) resided in Florida and/or (b) committed tortious acts in Florida.

8.      Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1) and/or 1391(b)(2)

Greenberg Traurig, P.A.  ■  333 S.E. 2nd Avenue, Suite 4400  ■  Miami, Florida 33131 ■ Tel 305.579.0500 ■  Fax 305.579.0717 ■  www.gtlaw.com

because at least one of the Defendants reside in this District and all Defendants are residents of Florida, and/or because a substantial part of the events giving rise to the below claims occurred in this District.

## THE PARTIES

9.      Mr. Silva is an individual whose domicile is London, United Kingdom. Mr. Silva owns a condominium in South Miami Beach.

10.     Defendant John Doe 1 is the owner of the website sossilva.org.  Upon information and belief, John Doe 1 resides in the State of Florida.  John Doe 1 committed the tortious acts described herein in the State of Florida.  Notably, as the allegations *infra* show, John Doe 1 may be one or more individuals and may be the same individual as John Doe 2, 3, or 4.

11.     Defendant John Doe 2 is the owner of the Reddit username @SOSilva7.  Upon information and belief, John Doe 2 resides in the State of Florida.  John Doe 2 committed the tortious acts described herein in the State of Florida.  Notably, as the allegations *infra* show, John Doe 2 may be one or more individuals and may be the same individual as John Doe 1, 3, or 4.

12.     Defendant John Doe 3 is the owner of the Twitter handle @SOSSilva7.  Upon information and belief, John Doe 3 resides in the State of Florida.  John Doe 3 committed the tortious acts described herein in the State of Florida.  Notably, as the allegations *infra* show, John Doe 3 may be one or more individuals and may be the same individual as John Doe 1,  2 or 4.

13.     Defendant John Doe 4 is the individual who hired the billboard from the Mobile Billboard Defendant. Upon information and belief, John Doe 4 resides in the State of Florida.  John Doe 4 committed the tortious acts described herein in the State of Florida.  Notably, as the allegations *infra* show, John Doe 4 may be one or more individuals and may be the same individual as John Doe 1, 2, or 3.

14.     The Mobile Billboard Defendant is a Florida corporation with principal offices in

3

Parrish, Florida, and is duly authorized to conduct business in the State of Florida. The Mobile Billboard Defendant offers mobile billboard services—i.e., a billboard that is placed on the rear of a motor vehicle and is observable by other motorists and pedestrians. The Mobile Billboard Defendant committed the tortious acts described herein in the State of Florida.

## FACTUAL BACKGROUND

15.     Mr. Silva is a husband, a father, and a renowned businessman and investor. He owns the investment company, Silva International Investments, an investment company that manages and invests in various sectors—media, technology, sports, entertainment, the arts, and real estate, to name a few. He also owns the model and talent agency, Select Model Management. In addition, he is the president and co-owner of the American professional soccer team, Miami FC, and an investor in and co-owner of AC Milan, one of the most successful soccer teams in the world.

16.     Mr. Silva is a devoted philanthropist, as well. He donates substantial time and money to various causes. He has made significant donations across a range of projects in Europe, Africa, and the United States (particularly, Miami, Florida), including to Florida International University ("FIU"), Mount Sinai Medical Center, Gulliver Schools, St. Stephen's Episcopal Day School, the Bass Museum of Art, the New World Symphony, Play for Change, The Foundation for AIDS Research, Elton John AIDS Foundation, the Novak Djokovic Foundation, Movimiento Shalom, and the Bali Street Kids Project. In recognition of Mr. Silva's contributions to FIU and, more generally, to the city of Miami, FIU named its football and soccer stadium—Riccardo Silva Stadium—after him.

17.     Mr. Silva is an upstanding, law-abiding citizen. And yet, to his shock, the Defendants have recently set forth a damaging campaign against him, designed to damage him

4

personally and professionally by accusing him of conduct that is categorially false. Specifically, the Defendants have falsely accused Mr. Silva of serial sexual abuse and sexual harassment, bribery, and other falsely alleged conduct. Outrageously, the Defendants have falsely compared Mr. Silva to the likes of Jeffrey Epstein.

18.     Each and every one of these accusations against Mr. Silva is knowingly **false**—fabricated by the Defendants to damage and destroy Mr. Silva's personal and professional life.

19.     Mr. Silva seeks compensatory and punitive damages resulting from the harm that the Defendants' defamatory campaign has caused him and will continue to cause him.

### The Website

20.     John Doe 1 created the website sossilva.org (the "Website") on September 8, 2022.

21.     The Website contains only the following accusations:

We, the survivors of sexual violence and exploitation at the hands of Riccardo Silva of Select Model Management, Silva International Investments, and other companies, have built this site to tell our story to the world, For years, Silva has used his business interests to further his own dark desires, As young women in the modeling industry, we knew that people like Riccardo Silva were out there, looking to prey on us through a combination of intimidation, bribery and emotional abuse. Silva was and is all that and more. He declared himself "untouchable" to almost all of us. He laughed when confronted with the toll his abuse had taken. He pursued us in every way and tried to destroy us when we resisted.

Like Epstein before him, he sheltered himself from any blowback through his wealth and his connections.Today we say no more. Today, we name Riccardo Silva as a serial sexual predator. We will tell our story to the world. We will not rest until the world knows who Riccardo Silva really is. Not the patron of the arts or football enthusiast or business "mogul", but a thug. An animal. A coward. An absentee father to children he denies.Your crimes will be exposed.

We demand justice. We will not rest until you acknowledge the havoc you have brought upon the lives of so many.

22.     Each and every one of these accusations made by John Doe 1 on the Website against Mr. Silva is knowingly false, defamatory, and extreme and outrageous.

### The Reddit Campaign

23.     John Doe 2 created the Reddit username u/SOSilva7 on September 8, 2022—the

Greenberg Traurig, P.A. ▪ 333 S.E. 2nd Avenue, Suite 4400 ▪ Miami, Florida 33131 ▪ Tel 305.579.0500 ▪ Fax 305.579.0717 ▪ www.gtlaw.com

same day the Website was created.

24.     Throughout October 2022, u/SOSilva7 made the following post (the "Reddit Posts") across several Reddit forums, including r/NYC, r/Miami, r/Florida, r/Chicago, r/Illinois, r/London, r/metoo, r/Modeling, r/sexualassault, r/TwoXChromosomes, r/abusesurvivors, r/emotionalabuse.  Together, there are roughly 16.1 million members in these Reddit forums:

"TW- my story of abuse and harassment.

Hello All,

I was in the industry for years and left after the incident I've described below. Currently, my goal is to make aspiring models and others interested in the industry aware that this behavior occurs and is far more commonplace than most think. Everything here happened to me and unfortunately was experienced by several people.

A few years ago, I began working with Select Model Management. They had (and objectively have) a decent reputation in a industry where we all pretty much realize it is only a matter of time until we experience something creepy, unwelcomed or downright horrible.

Over the course of my work, I interacted with Riccardo Silva. He's European (Italian I think) and married. Extremely wealthy. Multiple businesses and everything you'd expect. We were at several events together and he was always surrounding himself with my colleagues, other women from other agencies or just women in general. His vibe was . . . neutral but hostile? If that makes sense? Not a huge change from most in the industry, so I really just went about my work.

Over time, I saw him at other events more frequently, we made small talk and that was about it. One time he touched my shoulder with unusual force, but I didn't think much of it. Then he started reaching out. This was unsettling, because I certainly didn't expect it and while the agency had all of my info, you don't expect someone who is essentially your boss to reach out socially.

It went from a normal, 'hey, how are you', and got weird immediately after. Asking me what I liked sexually. Telling me his body count and who specifically in our agency that he slept with. The 'obvious benefits' of me sleeping with him. My brain just blanked. I didn't really respond initially. This had happened so often before at other places, and a quick 'fck off!' usually helped, but not with a person at this level and not there. I just didn't know what to do.

He kept it up, it became almost an everyday thing. I started to respond and tell him

6

this made me uncomfortable. He ignored it every time. When I saw him, he'd touch me and say things under his breath. If I was talking to other men, he'd interject himself into the conversation. All the while, he kept harassing me. I mentioned it to other people and they'd shrug, or nod, share their experience and tell me to stay as far away from him as possible. It made me physically sick. I lost weight, lost interest in a lot of things. One of the worst parts was seeing him present this image to the outside world that he was a good guy, pictures with his family playing soccer, art donations, etc. Meanwhile, he tormented me at the same time.

He ramped it up and got angry. If I wouldn't sleep with him on my own, I'd 'do it for money, of course' Constant propositions, across phone, text, dm, etc. Shaming me. Saying he'd destroy me. Destroy my career. Shame my family, especially a family member that was very ill at the time. All the things I feared, however irrational, he pushed on and made me feel like shit. It came to a head when I saw him for the last time and he grabbed me so hard on my arm it left bruises. Told me he 'wasn't interested in trash like me', that he just wanted to toy with me, that I wasn't pretty enough anyway.

I quit. Soon after, a flood of people reached out to me, sharing their experiences, which were identical to my own in some cases, and far, far, far worse in others. He harassed, intimidated, and violently abused several women. He abused his position of power to abuse others.

My life was pretty beautiful, and it still is, but despite therapy and wonderful family and friends, Riccardo's harassment and abuse changed who I am, and how I interact with people in every part of my life.

It made me harder, but I'm determined to use that to help others. To make people like him know that they can't treat people like that and to call that abuse out for others.

If you have experienced anything like this, I send you strength and love. Thank you all for reading."

25.     In December 2022, John Doe 2 created and assigned itself as the moderator of the

Reddit forum r/SOSSilvaSurvivors (the "Reddit Forum").

26.     In the Reddit Forum, u/SOSilva7 made the following post:

7



27.     Each and every one of these accusations made by John Doe 2 on Reddit against Mr. Silva is knowingly false, defamatory, and extreme and outrageous.

**<u>The Twitter Campaign</u>**

28.     In September 2022, John Doe 3 created the Twitter account @SOSSilva7, which is based out of Miami, Florida, as the account's Twitter page shows.   The biography reads: "Survivors Of Silva- The survivors of sexual violence and intimidation at the hands of Riccardo Silva of Select Model Management/Silva International Investments":

8



29.     On December 3, 2022, John Doe 3 posted a five-tweet thread, tagging media entities, such as the Miami Herald, Miami New Times, and Miami Beach News, along with the Twitter account for the international arts festival, Art Basel, which is located in Miami, Florida. The thread contained similar defamatory and false accusations to those made by John Doe 1 on the Website and by John Doe 2 on Reddit:



**SOSSilva**
@SOSSilva7
···

After years of gathering our courage, we are finally ready to tell our stories of abuse, harassment and degradation at the hands of Riccardo Silva, owner of @sportbusiness and @themiamifc. A thread 1 @MiamiHerald @MiamiNewTimes @MiamiBeachNews @ArtBasel

10:05 AM · Dec 3, 2022



**SOSSilva**
@SOSSilva7
···

Silva used the modeling industry as a vehicle to feed his desires to harass, intimidate and abuse young women. He used every method possible to make us feel insignificant and small
2
@MiamiHerald @MiamiNewTimes @MiamiBeachNews @ArtBasel

10:08 AM · Dec 3, 2022



**SOSSilva**
@SOSSilva7
···

After one of us told her story on Reddit, there was an outpouring of support, love, advice and grace from other victims of abuse and intimidation. The love we were shown gave us the strength to be here in this place now
3
@MiamiHerald @MiamiNewTimes @MiamiBeachNews @ArtBasel

10:10 AM · Dec 3, 2022

10





30.     Like the false accusations against Mr. Silva on the Website and on Reddit, John

Doe 3's accusations of grotesque conduct against Mr. Silva on Twitter are knowingly false,

defamatory, and extreme and outrageous.

### The Mobile Billboard Campaign

31.     In or around December 2, 2022, Defendant John Doe 4 purchased a mobile

billboard (the "Billboard") from the Mobile Billboard Defendant.

32.     Defendant John Doe 4 hired the Mobile Billboard Defendant to drive around the

location of Mr. Silva's condominium he owns in South Miami Beach on Saturday, December 3,

2022, which was the weekend of Miami Art Basel, one of the busiest weekends of the year in

Miami Beach.

11

33.    On the Billboard, the Defendants falsely accused Mr. Silva of being a "predator on the loose in Miami." Observers of the Billboard are further directed to the above-referenced Twitter handle, @SOSSilva7, and Reddit Forum, r/SOSSilvaSurvivors:



34.    The Defendants' accusation that Mr. Silva is a "predator" is knowingly false,

12

defamatory, and extreme and outrageous.  And, as alleged *supra*, the accusations against him on Twitter and Reddit are knowingly false, defamatory, and extreme and outrageous.

35.     The Mobile Billboard Defendant knew or should have known the accusations against him were false or, at least, the Mobile Billboard Defendant recklessly disregarded the falsity of the accusations.

36.     Mr. Silva's seventeen-year-old son witnessed the truck driving around the neighborhood of Mr. Silva's South Beach condo. He was devasted to see his father portrayed in this way. This has caused extreme emotional distress to Mr. Silva and his family.

37.     Mr. Silva has suffered damages as a result of the Defendants' knowingly false, defamatory, extreme and outrageous, and injurious campaign against him.  In particular, Mr. Silva has suffered, and will continue to suffer, monetary damages, including in connection with his reputation and business interests, and severe emotional distress.  In addition, Mr. Silva fears for his and his family's safety and security, given the defamatory and harassing campaign against him.

38.     All conditions precedent to the maintenance of this action have occurred, been performed, complied with, or waived.

### COUNT I: DEFAMATION (LIBEL)
#### (Against All Defendants)

39.     Mr. Silva incorporates as if fully set forth herein paragraphs 1 through 38 above.

40.     The Defendants published to millions of third parties knowingly false, defamatory statements of and concerning Mr. Silva on the Website, Twitter, Reddit, and the Billboard, as outlined *supra*.

41.     The Defendants knew that said statements of and concerning Mr. Silva were false, recklessly disregarded the falsity of said statements, and/or were negligent as to the falsity of said statements.

13

42.     As a result of the Defendants' wide publication of the above false statements, Mr. Silva has suffered damages, including without limitation, monetarily, to his reputation, and to his business interests.

WHEREFORE, Mr. Silva demands judgment against the Defendants for money damages, pre- and post-judgment interest, and such other relief as the Court deems just and proper.  In addition, Mr. Silva seeks punitive damages pursuant to Fla. Stat. § 768.72.

**COUNT II: DEFAMATION (LIBEL) PER SE**
**(Against All Defendants)**

43.     Mr. Silva incorporates as if fully set forth herein paragraphs 1 through 42 above.

44.     The Defendants published to millions of third parties knowingly false, defamatory statements of and concerning Mr. Silva on the Website, Twitter, Reddit, and the Billboard, as outlined *supra*.

45.     Those false, defamatory statements charged that Mr. Silva committed infamous crimes and/or felonies, including without limitation, sex crimes and bribery.  In addition, the false, defamatory statements subject Mr. Silva to hatred, distrust, ridicule, contempt, and/or disgrace. Finally, the false, defamatory statements harm Mr. Silva in his many business ventures articulated *supra*.

46.     Accordingly, Mr. Silva has suffered damages, including without limitation, monetarily, to his reputation, and to his business interests.

WHEREFORE, Mr. Silva demands judgment against the Defendants for money damages, pre- and post-judgment interest, and such other relief as the Court deems just and proper.  In addition, Mr. Silva seeks punitive damages pursuant to Fla. Stat. § 768.72.

14

## COUNT III: DEFAMATION (LIBEL) BY IMPLICATION
### (Against All Defendants)

47.    Mr. Silva incorporates as if fully set forth herein paragraphs 1 through 46 above.

48.    Mr. Silva asserts Count III in the alternative to Counts I and II.

49.    To the extent that one or more of the Defendants' statements on the Website, Twitter, Reddit, and/or the Billboard, which were published to millions of people, are determined to be true, all resulting suggestions, impressions, and/or implications that Mr. Silva engaged in any criminal or deviant misconduct are false.

50.    The false suggestions, impressions, and/or implications that Mr. Silva engaged in any criminal or deviant misconduct have caused serious harm to Mr. Silva.

51.    Accordingly, Mr. Silva has suffered damages, including without limitation, monetarily, to his reputation, and to his business interests.

WHEREFORE, Mr. Silva demands judgment against the Defendants for money damages, pre- and post-judgment interest, and such other relief as the Court deems just and proper. In addition, Mr. Silva seeks punitive damages pursuant to Fla. Stat. § 768.72.

## COUNT IV: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against All Defendants)

52.    Mr. Silva incorporates as if fully set forth herein paragraphs 1 through 51 above.

53.    The Defendants engaged in extreme and outrageous conduct, including without limitation, by setting forth an internet and billboard campaign to falsely accuse Mr. Silva of heinous, criminal conduct—being compared to the likes of Jeffrey Epstein. Engaging in a campaign to publish knowingly false and defamatory accusations of the most grotesque order goes beyond all possible bounds of decency and such ruthless attacks are intolerable in a civilized society.

15

54.     The Defendants engaged in such extreme and outrageous conduct with the intent to ruin Mr. Silva's personal and professional life, and thus to cause him severe emotional distress.

55.     At the very least, the Defendants' extreme and outrageous conduct was done with reckless disregard to the probability of causing Mr. Silva severe emotional distress.

56.     Mr. Silva has suffered severe emotional distress, and will continue to suffer severe emotional distress, as a result of the Defendants' extreme and outrageous conduct.  In addition, the mobile billboard was seen by Mr. Silva's seventeen-year-old son, a likely, and indeed intended, consequence of having the mobile billboard driven outside of Mr. Silva's condominium. Mr. Silva's son was extremely distraught by what he saw, which has caused Mr. Silva severe emotional distress at the damage this defamatory publication has inflicted on his entire family.

WHEREFORE, Mr. Silva demands judgment against the Defendants for money damages, pre- and post-judgment interest, and such other relief as the Court deems just and proper.  In addition, Mr. Silva seeks punitive damages pursuant to Fla. Stat. § 768.72.

## COUNT V: INJUNCTION – STALKING, § 784.0485(1), FLA. STAT.
### (Against All Defendants)

57.     Mr. Silva incorporates as if fully set forth herein paragraphs 1 through 56 above.

58.     The Defendants have willfully, maliciously, and repeatedly harassed Mr. Silva through their harassment and defamatory campaign against him, both online and in person.

59.     Mr. Silva has suffered severe emotional distress, and will continue to suffer severe emotional distress, as a result of the Defendants' campaign.  In addition, Mr. Silva and his family have suffered from grave concerns to their safety and security as a result of the Defendants' harassment and defamatory campaign.

60.     The Defendants' harassment and defamatory campaign serves no legitimate purpose, as it is based on knowing falsehoods.

16

61.    Mr. Silva has a clear legal right to not be harassed and defamed in violation of the law.

62.    There is no adequate remedy at law for the further violation of this right, necessitating this Court's intervention to enjoin the Defendants from continuing their campaign.

63.    Should the Court fail to permanently enjoin the Defendants from continuing their campaign, Mr. Silva will continue to suffer severe emotional distress and he and his family will continue to be in grave fear for their safety and security.

WHEREFORE, Mr. Silva demands an order permanently enjoining the Defendants from continuing their harassment and defamatory campaign, and such other relief as the Court deems just and proper.

Dated: January 4, 2023                     Respectfully submitted,

By: */s/ Joshua M. Mandel*

**GREENBERG TRAURIG, PA**
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0570
Facsimile: (305) 961-5702
THOMAS R. HEISLER
Florida Bar No. 1029852
heislert@gtlaw.com
BENJAMIN GREENBERG
Florida Bar No. 192732
greenbergb@gtlaw.com
JOSHUA M. MANDEL
Florida Bar No. 1031396
mandelj@gtlaw.com
cruzm@gtlaw.com
fernandezf@gtlaw.com
FLService@gtlaw.com

*Counsel for Plaintiff Riccardo Silva*

17

# EXHIBIT 7

**WHITE & CASE**

April 11, 2023

<u>VIA MAIL AND EMAIL</u>

White & Case LLP
555 South Flower Street
Suite 2700
Los Angeles, California 90071-2433
**T** +1 213 620 7700

**whitecase.com**

Adam Stolz, Esq. (astolz@lashgoldberg.com)
Lash & Goldberg LLP
100 SE 2nd St., Suite 1200
Miami, FL 33131

Re:     ***Ricardo Silva v. John Doe 1, et al.,*** **Case No. 1:22-cv-24262-RKA (S.D. Fla.) –**
        **Subpoena**

Dear Counsel:

We represent X Corp., successor in interest to Twitter, Inc. ("Twitter"). We are in receipt of the
Subpoena to Testify at Deposition in a Civil Action (the "Subpoena") that you served on behalf of
the Plaintiff in connection with the above-referenced action. In accordance with applicable rules,
including the Federal Rules of Civil Procedure, Twitter responds to the Subpoena, as well as the
document requests and matters on which examination is requested ("Requests") in the Subpoena
as follows:

<u>**General Objections**</u>

1.    The following responses are based on information currently available to Twitter. These
      responses are given without prejudice to Twitter's right to produce or rely on subsequently
      discovered information.

2.    Twitter reserves the right to amend, supplement, or otherwise modify its responses and
      interpose objections not asserted herein. Twitter's failure to include any objection to the
      Requests or any particular definition is neither intended as, nor shall in any way be deemed,
      a waiver of Twitter's right to assert that or any other objection.

3.    Twitter objects to each Request to the extent they seek documents not in Twitter's
      possession, custody, or control.

4.    Twitter objects to all definitions, instructions, and Requests that purport to impose
      obligations on Twitter that are different from, in addition to, or greater than those set forth
      in the Federal Rules of Civil Procedure.

5.    Twitter further objects to the terms "document or documents," "relating to or related to,"
      "communication," "handle," "non-content," "information," "basic subscriber information,"

April 11, 2023

WHITE & CASE

"owner," "subscriber identity," "payment information," "billing information," "information that is related," "used to identify," "IP logs," "and "account," on the basis that these terms are vague and ambiguous, overbroad, and unduly burdensome, as the scope of materials sought in the Request is unclear.

6.    Twitter objects to the Requests to the extent they exceed the scope of basic subscriber information that Twitter may permissibly produce under the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 *et seq*., including the Stored Communications Act, 18 U.S.C. §§ 2701 *et seq.* ("SCA"), and to the extent they seek the content of a user's electronic communications, such as messages, posts, comments, photos, or videos, because such a request is barred by the SCA.  The SCA does not permit private parties to compel production of the content of a user's electronic communications from service providers such as Twitter by service of a subpoena or court order, and there is no exception for civil discovery demands.   18 U.S.C. §§ 2702(a)(1), (2); 2702(b)(1)-(8); *see also Suzlon Energy Ltd. v. Microsoft Corp*., 671 F.3d 726, 730 (9th Cir. 2011) (holding that non-governmental entities may not obtain communications content with a civil discovery demand because it would "invade[] the specific interests that the [SCA] seeks to protect."); *O'Grady v. Superior Court*, 139 Cal. App. 4th 1423, 1441-47 (2006) (holding that the SCA bars civil litigants from obtaining communications content from a service provider).  Such requests must be directed to the user or other non-provider entities.  Active users can log into their accounts at any time to preserve, collect, produce, and authenticate their account contents.  Various tools are available to help users access and download their information.  Descriptions of these tools are available in Twitter's Help Center (https://help.twitter.com/en/managing-your-account/accessing-your-twitter-data).

7.    Twitter further objects to the Subpoena because you have provided no documentation demonstrating that the Court considered and imposed the First Amendment safeguards required before a litigant may be permitted to unmask the identity of an anonymous speaker. *See Smythe v. Does 1-10*, No. 15-mc-80292-LB, 2016 WL 54125 (N.D. Cal. Jan. 5, 2016) (denying the motion to enforce a subpoena against Twitter where movant failed to overcome user's First Amendment right to anonymous speech).  Before a subpoena can issue to a service provider like Twitter for information regarding the identity of an anonymous internet user, the party seeking the information must first "persuade[] the court that there is a real evidentiary basis for believing that the defendant has engaged in wrongful conduct that has caused real harm to the interests of the plaintiff." *Music Grp. Macao Com. Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 983 (N.D. Cal. 2015) (citing *Highfields Cap. Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 975-76 (N.D. Cal. 2005)); *see also Krinsky v. Doe 6*, 159 Cal. App. 4th 1154 (2008) (explaining that a plaintiff seeking to unmask an anonymous speaker must (1) make a reasonable effort to notify the defendant that they are the subject of a subpoena; (2) make a prima facie showing of the elements of defamation; and (3) make clear to the court that the discovery of defendants' identity is necessary to pursue plaintiff's claim).  It is unclear here whether the Court has issued an order with the requisite First Amendment findings.

2

WHITE & CASE

April 11, 2023

8.      Twitter further objects to the Requests to the extent they seek information that is more properly obtained by issuing discovery requests directly to a party in this action.  Litigants have an obligation to avoid imposing an undue burden on non-parties, and non-party discovery should therefore occur only if the information is not available through discovery from the parties to the litigation themselves.  *See* Fed. R. Civ. P. 45(d)(1), (d)(3)(A)(iv).  Indeed, a party "must first establish that it cannot obtain the discoverable information from its party-opponent before subpoenaing those documents from a non-party."  *In re CareSource Mgmt. Grp. Co.*, 289 F.R.D. 251, 254 (S.D. Ohio 2013); *see also Great Am. Ins. Co. v. Veteran's Support Org.*, 166 F. Supp. 3d 1303, 1310 (S.D. Fla. 2015) ("With regard to the burden imposed on non-parties in responding to discovery requests, courts consider the following factors: relevance, the requesting party's need for the documents, the breadth of the document request, and the time period covered by the request….[i]n balancing the need for discovery against the burden imposed on the person from whom documents are sought the status of a person as a non-party is a factor that weights against disclosure.") (internal citations omitted).  Twitter does not have an "obligation to determine which documents have, or have not, been produced to" parties to the litigation.  *In re CareSource Mgmt. Grp. Co.*, 289 F.R.D at 254.

9.      Twitter objects to the Requests to the extent they seek protected or privileged information, including information protected by the attorney-client privilege, work product doctrine, or other applicable privilege, or confidential, proprietary, or trade secret information.  Twitter does not intend to disclose any protected material.  Any disclosure of protected materials is inadvertent and should not be construed as a waiver of any applicable privilege or protection.

10.     Twitter objects to the Subpoena, including the "Document Production Delivery Standards" detailed therein, to the extent it calls for information to be produced in a form or manner other than that kept by Twitter in the usual course of its business.

11.     Twitter notes that according to its policies it will give notice to an impacted user before producing basic subscriber information.

12.     These general objections shall apply to each response, and the general objections shall be deemed as continuing as to each Request and are not waived, or limited, by Twitter's specific objections and responses.

## Specific Responses and Objections

## Document Request No. 1:

All non-content documents, communications, and information that constitute basic subscriber information for the owner(s) of the Twitter Handle/account, @SOSSilva7, including, but not limited to, name(s), street/mailing address(es), email address(es), IP logs, username(s) or other subscriber identity, payment information, billing information, or any other information that is related or could be used to identify the owner(s) of the Handle.

//

3

April 11, 2023

**Response to Document Request No. 1:**

In addition to the foregoing objections, Twitter objects to the terms "documents," "relating to or related to," "communication," "handle," "non-content," "information," "basic subscriber information," "owner," "subscriber identity," "payment information," "billing information," "information that is related," "used to identify," "IP logs," and "account," on the basis that these terms are vague and ambiguous, overbroad, and unduly burdensome, as the scope of materials sought in the Request is unclear.

Twitter further objects to this Request to the extent it seeks information that should be directed to the user or other non-provider entities.  Active users can log into their accounts at any time to preserve, collect, produce, and authenticate their account contents.  Various tools are available to help users access and download their information.  Descriptions of these tools are available in Twitter's Help Center (https://help.twitter.com/en/managing-your-account/accessing-your-twitter-data).

Twitter further objects to this Request to the extent that it seeks information that is more properly obtained by issuing discovery requests directly to a party in this action.

Twitter further objects to the Request to the extent it exceeds the scope of basic subscriber information that Twitter may permissibly produce under the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 *et seq.*, including the SCA, 18 U.S.C. §§ 2701 *et seq.*, and to the extent it seeks information that is prohibited from disclosure and/or is not subject to production under the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 *et seq.*, including the SCA, 18 U.S.C. §§ 2701 *et seq.*

Twitter further objects to the Request to the extent it seeks to unmask the identity of an anonymous speaker.  You have provided no documentation demonstrating that the Court considered and imposed the First Amendment safeguards required before a litigant may be permitted to unmask the identity of an anonymous speaker.

Twitter further objects on the basis that all legal process must properly identify the Twitter account at-issue by providing the @username and/or URL of the subject Twitter account in question (e.g., @safety and https://twitter.com/safety).  Twitter has more than 300 million users, making it impossible to ensure that searches based on name, date of birth, address, or like information accurately identify the correct records.  The Request purports to use such information in seeking to ask Twitter for "any other information that is related or could be used to identify the owner(s) of the Handle."

Subject to and without waiving these objections, Twitter responds as follows: Twitter will not produce documents in response to this Request.

\* \* \*

4

WHITE & CASE

April 11, 2023

Based on at least the foregoing objections, Twitter will not be producing any data in response to your Subpoena.  Please do not hesitate to contact me if you have any questions.  Twitter otherwise preserves and does not waive any other available objections or rights.

Sincerely,

**Jon Hawk**
**T** +(213) 620-7741
**E** jhawk@whitecase.com

5

# EXHIBIT 8

| | |
|---|---|
| **From:** | Adam Stolz <astolz@lashgoldberg.com> |
| **Sent:** | Friday, April 7, 2023 11:07 AM |
| **To:** | Hawk, J. Jonathan |
| **Cc:** | Kuethman, Kathryn |
| **Subject:** | RE: Silva v. Mobile Billboards Inc., et al., Case No. 1:22-cv-24262-RKA (S.D. Fla) |
| **Attachments:** | 2023.04.03 R. Silva-Subpoena to Twitter Inc. with Exhibit A.pdf |

Jon – Attached is a courtesy copy of the revised subpoena that was issued to Twitter on Monday (4/3). Below is additional information regarding service if helpful. Please advise as to Twitter's position as soon as possible and feel free to let me know if you have any questions or would like to further discuss.

Delivery Date:  4/03/23
Time: 12:40
Signed: Diana Ruiz intake spec

DELIVERY INFO:

Deliver To: TWITTER, INC. C/O CT CORPORATI
Delivery Addr:330 NORTH BRAND BOULEVARD          Room/Suite: Ste 700
City: GLENDALE
State/Zip: CA 91203

Case Number: 1:22-cv-24262-RKA

Thank you,

**Adam Stolz**
Attorney
T (305) 347-4040
E astolz@lashgoldberg.com

 LashGoldberg

Miami Tower
100 SE 2nd St., Ste. 1200
Miami, Florida 33131
www.lashgoldberg.com

**From:** Hawk, J. Jonathan <jhawk@whitecase.com>
**Sent:** Friday, March 31, 2023 4:04 PM
**To:** Adam Stolz <astolz@lashgoldberg.com>
**Cc:** Kuethman, Kathryn <kathryn.kuethman@whitecase.com>; Christen Hernandez <chernandez@lashgoldberg.com>
**Subject:** RE: Silva v. Mobile Billboards Inc., et al., Case No. 1:22-cv-24262-RKA (S.D. Fla)

EXTERNAL:
My cell is great: (626) 755-1400. Talk then.

Jon

1

**J Jonathan Hawk**  |  Partner
**T**  +1 213 620 7741    **M**  +1 626 755 1400    **E**  jhawk@whitecase.com
White & Case LLP  |  555 South Flower Street, Suite 2700  |  Los Angeles, CA 90071-2433

**From:** Adam Stolz <astolz@lashgoldberg.com>
**Sent:** Friday, March 31, 2023 1:02 PM
**To:** Hawk, J. Jonathan <jhawk@whitecase.com>
**Cc:** Kuethman, Kathryn <kathryn.kuethman@whitecase.com>; Christen Hernandez <chernandez@lashgoldberg.com>
**Subject:** RE: Silva v. Mobile Billboards Inc., et al., Case No. 1:22-cv-24262-RKA (S.D. Fla)

Yes, thank you very much. Please let me know your preferred contact number where I could reach you. Talk soon.

**Adam Stolz**
Attorney
T (305) 347-4040
E astolz@lashgoldberg.com



Miami Tower
100 SE 2nd St., Ste. 1200
Miami, Florida 33131
www.lashgoldberg.com

**From:** Hawk, J. Jonathan <jhawk@whitecase.com>
**Sent:** Friday, March 31, 2023 3:59 PM
**To:** Adam Stolz <astolz@lashgoldberg.com>
**Cc:** Kuethman, Kathryn <kathryn.kuethman@whitecase.com>; Christen Hernandez <chernandez@lashgoldberg.com>
**Subject:** RE: Silva v. Mobile Billboards Inc., et al., Case No. 1:22-cv-24262-RKA (S.D. Fla)

EXTERNAL:
Hi, Adam. Of course. Does 4:30 pm Pacific work?

Jon

**J Jonathan Hawk**  |  Partner
**T**  +1 213 620 7741    **M**  +1 626 755 1400    **E**  jhawk@whitecase.com
White & Case LLP  |  555 South Flower Street, Suite 2700  |  Los Angeles, CA 90071-2433

**From:** Adam Stolz <astolz@lashgoldberg.com>
**Sent:** Friday, March 31, 2023 12:04 PM
**To:** Hawk, J. Jonathan <jhawk@whitecase.com>
**Cc:** Kuethman, Kathryn <kathryn.kuethman@whitecase.com>; Christen Hernandez <chernandez@lashgoldberg.com>
**Subject:** RE: Silva v. Mobile Billboards Inc., et al., Case No. 1:22-cv-24262-RKA (S.D. Fla)

Jon – no worries, thanks for quickly getting back to me. Is there any possible way you could squeeze in a quick call today for five minutes? I would, of course, make myself available at your convenience.

In short, we are planning to issue a revised subpoena today and I would like to go over a few things with you in advance as a courtesy if you could fit me in.

Thank you,

**Adam Stolz**
Attorney

2

T (305) 347-4040
E astolz@lashgoldberg.com



Miami Tower
100 SE 2nd St., Ste. 1200
Miami, Florida 33131
www.lashgoldberg.com

---

**From:** Hawk, J. Jonathan <jhawk@whitecase.com>
**Sent:** Friday, March 31, 2023 2:35 PM
**To:** Adam Stolz <astolz@lashgoldberg.com>
**Cc:** Kuethman, Kathryn <kathryn.kuethman@whitecase.com>; Christen Hernandez <chernandez@lashgoldberg.com>
**Subject:** RE: Silva v. Mobile Billboards Inc., et al., Case No. 1:22-cv-24262-RKA (S.D. Fla)

**EXTERNAL:**

Hi, Adam. Sorry for the delay. I'm jammed up today and traveling Monday. Does Tuesday work?

**J Jonathan Hawk** | Partner
**T** +1 213 620 7741   **M** +1 626 755 1400   **E** jhawk@whitecase.com
White & Case LLP | 555 South Flower Street, Suite 2700 | Los Angeles, CA 90071-2433

**From:** Adam Stolz <astolz@lashgoldberg.com>
**Sent:** Friday, March 31, 2023 11:31 AM
**To:** Hawk, J. Jonathan <jhawk@whitecase.com>
**Cc:** Kuethman, Kathryn <kathryn.kuethman@whitecase.com>; Christen Hernandez <chernandez@lashgoldberg.com>
**Subject:** RE: Silva v. Mobile Billboards Inc., et al., Case No. 1:22-cv-24262-RKA (S.D. Fla)

Hey Jon – following up on the below. Please advise if you're available for a short call today. Thank you.

**Adam Stolz**
Attorney
T (305) 347-4040
E astolz@lashgoldberg.com



Miami Tower
100 SE 2nd St., Ste. 1200
Miami, Florida 33131
www.lashgoldberg.com

---

**From:** Adam Stolz
**Sent:** Thursday, March 30, 2023 8:21 PM
**To:** Hawk, J. Jonathan <jhawk@whitecase.com>
**Cc:** Kuethman, Kathryn <kathryn.kuethman@whitecase.com>; Christen Hernandez <chernandez@lashgoldberg.com>
**Subject:** RE: Silva v. Mobile Billboards Inc., et al., Case No. 1:22-cv-24262-RKA (S.D. Fla)

Hey Jon,

Hope all has been well since we last spoke. Unfortunately, we still have been unable to obtain the necessary information regarding the defendant's identify from another source and are constrained to renew our request that Twitter provide it.  Please let me know if you're available this evening or tomorrow for a brief call to discuss where the parties stand and potential next steps.

Thank you and regards,

**Adam Stolz**
Attorney
T (305) 347-4040
E astolz@lashgoldberg.com



Miami Tower
100 SE 2nd St., Ste. 1200
Miami, Florida 33131
www.lashgoldberg.com

---

**From:** Hawk, J. Jonathan <jhawk@whitecase.com>
**Sent:** Wednesday, March 1, 2023 1:47 PM
**To:** Adam Stolz <astolz@lashgoldberg.com>
**Cc:** Kuethman, Kathryn <kathryn.kuethman@whitecase.com>; Christen Hernandez <chernandez@lashgoldberg.com>
**Subject:** RE: Silva v. Mobile Billboards Inc., et al., Case No. 1:22-cv-24262-RKA (S.D. Fla)

<mark>EXTERNAL:</mark>
Great. Thanks. Talk then.

J Jonathan Hawk  |  Partner
**T** +1 213 620 7741    **M** +1 626 755 1400    **E** jhawk@whitecase.com
White & Case LLP  |  555 South Flower Street, Suite 2700  |  Los Angeles, CA 90071-2433

---

**From:** Adam Stolz <astolz@lashgoldberg.com>
**Sent:** Wednesday, March 1, 2023 10:46 AM
**To:** Hawk, J. Jonathan <jhawk@whitecase.com>
**Cc:** Kuethman, Kathryn <kathryn.kuethman@whitecase.com>; Christen Hernandez <chernandez@lashgoldberg.com>
**Subject:** RE: Silva v. Mobile Billboards Inc., et al., Case No. 1:22-cv-24262-RKA (S.D. Fla)

Sounds good. My assistant will circulate a conference line.

Talk soon,

**Adam Stolz**
Attorney
T (305) 347-4040
E astolz@lashgoldberg.com



Miami Tower
100 SE 2nd St., Ste. 1200
Miami, Florida 33131
www.lashgoldberg.com

---

**From:** Hawk, J. Jonathan <jhawk@whitecase.com>
**Sent:** Wednesday, March 1, 2023 1:43 PM
**To:** Adam Stolz <astolz@lashgoldberg.com>
**Cc:** Kuethman, Kathryn <kathryn.kuethman@whitecase.com>; Christen Hernandez <chernandez@lashgoldberg.com>
**Subject:** RE: Silva v. Mobile Billboards Inc., et al., Case No. 1:22-cv-24262-RKA (S.D. Fla)

EXTERNAL:
8:30 am pacific?

**J Jonathan Hawk**  |  Partner
**T**  +1 213 620 7741     **M**  +1 626 755 1400     **E**  jhawk@whitecase.com
White & Case LLP  |  555 South Flower Street, Suite 2700  |  Los Angeles, CA 90071-2433

**From:** Adam Stolz <astolz@lashgoldberg.com>
**Sent:** Wednesday, March 1, 2023 10:41 AM
**To:** Hawk, J. Jonathan <jhawk@whitecase.com>
**Cc:** Kuethman, Kathryn <kathryn.kuethman@whitecase.com>; Christen Hernandez <chernandez@lashgoldberg.com>
**Subject:** RE: Silva v. Mobile Billboards Inc., et al., Case No. 1:22-cv-24262-RKA (S.D. Fla)

Hey Jon – yes, I'm available tomorrow morning. Let me know what time works best for you.

**Adam Stolz**
Attorney
T (305) 347-4040
E astolz@lashgoldberg.com



Miami Tower
100 SE 2nd St., Ste. 1200
Miami, Florida 33131
www.lashgoldberg.com

**From:** Hawk, J. Jonathan <jhawk@whitecase.com>
**Sent:** Wednesday, March 1, 2023 1:17 PM
**To:** Adam Stolz <astolz@lashgoldberg.com>
**Cc:** Kuethman, Kathryn <kathryn.kuethman@whitecase.com>; Christen Hernandez <chernandez@lashgoldberg.com>
**Subject:** RE: Silva v. Mobile Billboards Inc., et al., Case No. 1:22-cv-24262-RKA (S.D. Fla)

EXTERNAL:
Adam, to quickly follow up -- are you free to re-convene either late this afternoon Pacific or tomorrow morning?

Jon

**J Jonathan Hawk**  |  Partner
**T**  +1 213 620 7741     **M**  +1 626 755 1400     **E**  jhawk@whitecase.com
White & Case LLP  |  555 South Flower Street, Suite 2700  |  Los Angeles, CA 90071-2433

**From:** Hawk, J. Jonathan
**Sent:** Monday, February 27, 2023 9:39 AM
**To:** 'Adam Stolz' <astolz@lashgoldberg.com>
**Cc:** Kuethman, Kathryn <kathryn.kuethman@whitecase.com>; Christen Hernandez <chernandez@lashgoldberg.com>
**Subject:** RE: Silva v. Mobile Billboards Inc., et al., Case No. 1:22-cv-24262-RKA (S.D. Fla)

That works as well. Thanks, Adam.

**J Jonathan Hawk**  |  Partner
**T**  +1 213 620 7741     **M**  +1 626 755 1400     **E**  jhawk@whitecase.com
White & Case LLP  |  555 South Flower Street, Suite 2700  |  Los Angeles, CA 90071-2433

**From:** Adam Stolz <astolz@lashgoldberg.com>
**Sent:** Monday, February 27, 2023 9:37 AM
**To:** Hawk, J. Jonathan <jhawk@whitecase.com>
**Cc:** Kuethman, Kathryn <kathryn.kuethman@whitecase.com>; Christen Hernandez <chernandez@lashgoldberg.com>
**Subject:** RE: Silva v. Mobile Billboards Inc., et al., Case No. 1:22-cv-24262-RKA (S.D. Fla)

Hey Jon,

Are you still available to talk tomorrow at 11 AM (PST)? My schedule for tomorrow recently opened up and I could do our call at or around that time if it still works for you.

Thank you,

**Adam Stolz**
Attorney
T (305) 347-4040
E astolz@lashgoldberg.com



Miami Tower
100 SE 2ⁿᵈ St., Ste. 1200
Miami, Florida 33131
www.lashgoldberg.com

**From:** Hawk, J. Jonathan <jhawk@whitecase.com>
**Sent:** Saturday, February 25, 2023 11:29 AM
**To:** Adam Stolz <astolz@lashgoldberg.com>
**Cc:** Kuethman, Kathryn <kathryn.kuethman@whitecase.com>; Martin Goldberg <mgoldberg@lashgoldberg.com>; Christen Hernandez <chernandez@lashgoldberg.com>
**Subject:** RE: Silva v. Mobile Billboards Inc., et al., Case No. 1:22-cv-24262-RKA (S.D. Fla)

<mark>EXTERNAL:</mark>
Thanks, Adam. That works.

**From:** Adam Stolz <astolz@lashgoldberg.com>
**Date:** Saturday, Feb 25, 2023 at 8:27 AM
**To:** Hawk, J. Jonathan <jhawk@whitecase.com>
**Cc:** Kuethman, Kathryn <kathryn.kuethman@whitecase.com>, Martin Goldberg <mgoldberg@lashgoldberg.com>, Christen Hernandez <chernandez@lashgoldberg.com>
**Subject:** RE: Silva v. Mobile Billboards Inc., et al., Case No. 1:22-cv-24262-RKA (S.D. Fla)

Hey, Jon. Yes, I'm free to chat again on Wednesday at 2:30 PST. I'll circulate a conference line ahead of the call.

Have a nice weekend,

**Adam Stolz**
Attorney
T (305) 347-4040
E astolz@lashgoldberg.com



Miami Tower
100 SE 2nd St., Ste. 1200
Miami, Florida 33131
www.lashgoldberg.com

---

**From:** Hawk, J. Jonathan <jhawk@whitecase.com>
**Sent:** Friday, February 24, 2023 6:56 PM
**To:** Adam Stolz <astolz@lashgoldberg.com>
**Cc:** Kuethman, Kathryn <kathryn.kuethman@whitecase.com>; Martin Goldberg <mgoldberg@lashgoldberg.com>;
Christen Hernandez <chernandez@lashgoldberg.com>
**Subject:** RE: Silva v. Mobile Billboards Inc., et al., Case No. 1:22-cv-24262-RKA (S.D. Fla)

---

<mark>EXTERNAL:</mark>
Hi, Adam. Thanks again for the call. Are you free to discuss on Monday afternoon? I'm free after 2:15 pm Pacific, or
otherwise am flexible Tuesday (except 9:30-10:30 am Pacific).

Jon

**J Jonathan Hawk** | Partner
**T** +1 213 620 7741   **M** +1 626 755 1400   **E** jhawk@whitecase.com
White & Case LLP | 555 South Flower Street, Suite 2700 | Los Angeles, CA 90071-2433

---

**From:** Adam Stolz <astolz@lashgoldberg.com>
**Sent:** Thursday, February 23, 2023 11:12 AM
**To:** Hawk, J. Jonathan <jhawk@whitecase.com>
**Cc:** Kuethman, Kathryn <kathryn.kuethman@whitecase.com>; Martin Goldberg <mgoldberg@lashgoldberg.com>;
Christen Hernandez <chernandez@lashgoldberg.com>
**Subject:** RE: Silva v. Mobile Billboards Inc., et al., Case No. 1:22-cv-24262-RKA (S.D. Fla)

Jon:

It was a pleasure speaking with you yesterday. As discussed, please let me know whether Twitter is willing to reconsider
its position and provide us with the BSI for the Handle in full satisfaction of the attached Subpoena. Once again, we have
no other way of obtaining the information and require it for the limited purposes of service and identification so the
proper individual(s) can appear before the court and participate in the litigation.

In the meantime, given that the Subpoena sets the deposition duces tecum for February 24, 2023, you may consider it
rescheduled until we agree on a future date and time if one is still necessary in light of our recent conversation. To
clarify, while we remain very hopeful that we can mutually resolve the matter, we nevertheless reserve the right to take
the deposition duces tecum at a date and time in the future.

I look forward to hearing back from you soon.

Thank you and regards,

**Adam Stolz**
Attorney
T (305) 347-4040
E astolz@lashgoldberg.com



Miami Tower
100 SE 2nd St., Ste. 1200
Miami, Florida 33131
www.lashgoldberg.com

---

**From:** Adam Stolz
**Sent:** Tuesday, February 21, 2023 10:14 AM
**To:** Hawk, J. Jonathan <jhawk@whitecase.com>
**Cc:** Kuethman, Kathryn <kathryn.kuethman@whitecase.com>; Martin Goldberg <mgoldberg@lashgoldberg.com>; Christen Hernandez <chernandez@lashgoldberg.com>
**Subject:** RE: Silva v. Mobile Billboards Inc., et al., Case No. 1:22-cv-24262-RKA (S.D. Fla)

Hey Jon,

Hope you had a nice weekend.  Here is a conference line for our call tomorrow at 2:30 PST:

Dial-in: 305-614-1257
Conference ID: 894296

Thank you,

**Adam Stolz**
Attorney
T (305) 347-4040
E astolz@lashgoldberg.com



Miami Tower
100 SE 2nd St., Ste. 1200
Miami, Florida 33131
www.lashgoldberg.com

---

**From:** Hawk, J. Jonathan <jhawk@whitecase.com>
**Sent:** Monday, February 20, 2023 2:02 PM
**To:** Adam Stolz <astolz@lashgoldberg.com>
**Cc:** Kuethman, Kathryn <kathryn.kuethman@whitecase.com>; Martin Goldberg <mgoldberg@lashgoldberg.com>; Christen Hernandez <chernandez@lashgoldberg.com>
**Subject:** RE: Silva v. Mobile Billboards Inc., et al., Case No. 1:22-cv-24262-RKA (S.D. Fla)

==EXTERNAL:==
Thanks, Adam. Great. Would you mind circulating a dial-in before our call?

Thanks,
Jon

**J Jonathan Hawk**  |  Partner
**T**  +1 213 620 7741   **M**  +1 626 755 1400   **E**  jhawk@whitecase.com
White & Case LLP  |  555 South Flower Street, Suite 2700  |  Los Angeles, CA 90071-2433

**From:** Adam Stolz <astolz@lashgoldberg.com>
**Sent:** Monday, February 20, 2023 10:19 AM
**To:** Hawk, J. Jonathan <jhawk@whitecase.com>
**Cc:** Kuethman, Kathryn <kathryn.kuethman@whitecase.com>; Martin Goldberg <mgoldberg@lashgoldberg.com>;

Christen Hernandez <chernandez@lashgoldberg.com>
**Subject:** RE: Silva v. Mobile Billboards Inc., et al., Case No. 1:22-cv-24262-RKA (S.D. Fla)

Yes, that works. Talk then.

Thank you,

**Adam Stolz**
Attorney
T (305) 347-4040
E astolz@lashgoldberg.com



Miami Tower
100 SE 2nd St., Ste. 1200
Miami, Florida 33131
www.lashgoldberg.com

**From:** Hawk, J. Jonathan <jhawk@whitecase.com>
**Sent:** Monday, February 20, 2023 12:35 PM
**To:** Adam Stolz <astolz@lashgoldberg.com>
**Cc:** Kuethman, Kathryn <kathryn.kuethman@whitecase.com>; Martin Goldberg <mgoldberg@lashgoldberg.com>; Christen Hernandez <chernandez@lashgoldberg.com>
**Subject:** RE: Silva v. Mobile Billboards Inc., et al., Case No. 1:22-cv-24262-RKA (S.D. Fla)

EXTERNAL:

Thanks, Adam. Could we do 2:30 pm on Wednesday?

Jon

**J Jonathan Hawk** | Partner
**T** +1 213 620 7741   **M** +1 626 755 1400   **E** jhawk@whitecase.com
White & Case LLP | 555 South Flower Street, Suite 2700 | Los Angeles, CA 90071-2433

**From:** Adam Stolz <astolz@lashgoldberg.com>
**Sent:** Sunday, February 19, 2023 8:06 PM
**To:** Hawk, J. Jonathan <jhawk@whitecase.com>
**Cc:** Kuethman, Kathryn <kathryn.kuethman@whitecase.com>; Martin Goldberg <mgoldberg@lashgoldberg.com>; Christen Hernandez <chernandez@lashgoldberg.com>
**Subject:** RE: Silva v. Mobile Billboards Inc., et al., Case No. 1:22-cv-24262-RKA (S.D. Fla)

Thanks, Jon. How about Wednesday at 1:30 (PST)?  Let me know a preferred contact number.

Kind regards,

**Adam Stolz**
Attorney
T (305) 347-4040
E astolz@lashgoldberg.com



Miami Tower
100 SE 2nd St., Ste. 1200

Miami, Florida 33131
www.lashgoldberg.com

---

**From:** Hawk, J. Jonathan <jhawk@whitecase.com>
**Sent:** Friday, February 17, 2023 6:57 PM
**To:** Adam Stolz <astolz@lashgoldberg.com>
**Cc:** Kuethman, Kathryn <kathryn.kuethman@whitecase.com>; Martin Goldberg <mgoldberg@lashgoldberg.com>; Christen Hernandez <chernandez@lashgoldberg.com>
**Subject:** RE: Silva v. Mobile Billboards Inc., et al., Case No. 1:22-cv-24262-RKA (S.D. Fla)

<mark>EXTERNAL:</mark>
Adam, thanks for your response and apologies for my delay in reverting. Today has been busy. I'm free to discuss Wednesday afternoon Pacific if there's a time that works for you? Just let me know. Thanks.

Jon

**J Jonathan Hawk**  |  Partner
**T** +1 213 620 7741    **M** +1 626 755 1400    **E** jhawk@whitecase.com
White & Case LLP  |  555 South Flower Street, Suite 2700  |  Los Angeles, CA 90071-2433

---

**From:** Adam Stolz <astolz@lashgoldberg.com>
**Sent:** Friday, February 17, 2023 10:59 AM
**To:** Hawk, J. Jonathan <jhawk@whitecase.com>
**Cc:** Kuethman, Kathryn <kathryn.kuethman@whitecase.com>; Martin Goldberg <mgoldberg@lashgoldberg.com>; Christen Hernandez <chernandez@lashgoldberg.com>
**Subject:** RE: Silva v. Mobile Billboards Inc., et al., Case No. 1:22-cv-24262-RKA (S.D. Fla)

Hey Jon,

Nice to meet you.  We are in receipt of your letter dated Feb. 17, 2023.  We appreciate you taking the time to promptly provide Twitter's views on the subpoena in the above-referenced matter.  Are you available this afternoon (Pacific Time) for a short call to discuss? If so, please let me know a convenient time and contact number.

Thank you,

**Adam Stolz**
Attorney
T (305) 347-4040
E astolz@lashgoldberg.com



Miami Tower
100 SE 2nd St., Ste. 1200
Miami, Florida 33131
www.lashgoldberg.com

---

**From:** Hawk, J. Jonathan <jhawk@whitecase.com>
**Sent:** Friday, February 17, 2023 12:01 PM
**To:** Adam Stolz <astolz@lashgoldberg.com>
**Cc:** Kuethman, Kathryn <kathryn.kuethman@whitecase.com>
**Subject:** Silva v. Mobile Billboards Inc., et al., Case No. 1:22-cv-24262-RKA (S.D. Fla)

EXTERNAL:
Counsel,

Please see the attached. A hard copy will follow by mail.

Best,
Jon

**J Jonathan Hawk**  |  Partner
**T**  +1 213 620 7741    **M**  +1 626 755 1400    **E**  jhawk@whitecase.com
White & Case LLP  |  555 South Flower Street, Suite 2700  |  Los Angeles, CA 90071-2433
**WHITE & CASE**

================================================================
This communication may be privileged and confidential and is intended only for the individual or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose this communication to others; also, please notify the sender by replying to this e-mail or by telephone at (213) 620-7700, and then delete the e-mail and any copies of it.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.

================================================================

================================================================
This communication may be privileged and confidential and is intended only for the individual or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose this communication to others; also, please notify the sender by replying to this e-mail or by telephone at (213) 620-7700, and then delete the e-mail and any copies of it.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.

================================================================

================================================================
This communication may be privileged and confidential and is intended only for the individual or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose this communication to others; also, please notify the sender by replying to this e-mail or by telephone at (213) 620-7700, and then delete the e-mail and any copies of it.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.

================================================================

================================================================
This communication may be privileged and confidential and is intended only for the individual or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose this communication to others; also, please notify the sender by replying to this e-mail or by telephone at (213) 620-7700, and then delete the e-mail and any copies of it.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.

=========================================================================

=========================================================================

This communication may be privileged and confidential and is intended only for the individual or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose this communication to others; also, please notify the sender by replying to this e-mail or by telephone at (213) 620-7700, and then delete the e-mail and any copies of it.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.

=========================================================================

=========================================================================

This communication may be privileged and confidential and is intended only for the individual or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose this communication to others; also, please notify the sender by replying to this e-mail or by telephone at (213) 620-7700, and then delete the e-mail and any copies of it.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.

=========================================================================

=========================================================================

This communication may be privileged and confidential and is intended only for the individual or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose this communication to others; also, please notify the sender by replying to this e-mail or by telephone at (213) 620-7700, and then delete the e-mail and any copies of it.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.

=========================================================================

=========================================================================

This communication may be privileged and confidential and is intended only for the individual or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose this communication to others; also, please notify the sender by replying to this e-mail or by telephone at (213) 620-7700, and then delete the e-mail and any copies of it.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.

=========================================================================

=========================================================================

This communication may be privileged and confidential and is intended only for the individual or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose this communication to others; also, please notify the sender by replying to this e-mail or by

telephone at (213) 620-7700, and then delete the e-mail and any copies of it.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.

========================================================================

========================================================================
This communication may be privileged and confidential and is intended only for the individual or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose this communication to others; also, please notify the sender by replying to this e-mail or by telephone at (213) 620-7700, and then delete the e-mail and any copies of it.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.


========================================================================

========================================================================
This communication may be privileged and confidential and is intended only for the individual or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose this communication to others; also, please notify the sender by replying to this e-mail or by telephone at (213) 620-7700, and then delete the e-mail and any copies of it.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.


========================================================================

========================================================================
This communication may be privileged and confidential and is intended only for the individual or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose this communication to others; also, please notify the sender by replying to this e-mail or by telephone at (213) 620-7700, and then delete the e-mail and any copies of it.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.


========================================================================